The plaintiff, Lorn Syx, appeals from a summary judgment for the defendants, Southeastern Fidelity Insurance Company; Midfield Volkswagen, Inc., d/b/a Midfield Dodge (this defendant is hereinafter called "Midfield Dodge"); Ted Cook;[1] and Autry Insurance Agency, Inc., in this action seeking damages for fraud. We affirm.
The plaintiff purchased a pick-up truck from Midfield Dodge on September 4, 1984. On February 24, 1985, the plaintiff was involved in an accident with another vehicle. Thereafter, he discovered that his automobile insurance policy did not include coverage for any of the damages and injuries sustained by the other vehicle and its occupant (i.e., it did not include liability coverage). This fraud action followed.
At the time he purchased the truck, the plaintiff applied to Autry Insurance Agency, Inc., for an automobile insurance policy issued by Southeastern Fidelity Insurance Company. A representative of Midfield Dodge prepared the documents of sale, including the application for insurance. Although he was given the opportunity, the plaintiff did not read the insurance application prior to signing it. The application clearly shows that only "comprehensive and collision" coverage was applied for. The plaintiff's insurance policy was delivered by mail on or about September 27, 1984, to the address he had provided. The plaintiff testified in his deposition that, with the exception of his bills, he does not read his mail. He admitted that as of the date of the deposition, he had probably accumulated a year's worth of unread mail. Although his policy was delivered to him approximately five and a half months prior to the accident, the plaintiff did not read it. He stated in his deposition that had he read his policy, he would have known that he did not have liability coverage. He stated further that he could have read his mail, including his insurance policy, if only he "had wanted to read it."
The plaintiff claims fraud because, he says, the representative of Midfield Dodge told him at the time he purchased the truck that he was applying for "full coverage," including liability coverage. The defendants moved for summary judgment on the ground that the plaintiff did not reasonably rely on any statement that might have been made by the Midfield Dodge representative. The thrust of the defendants' argument is that because the plaintiff failed to read the insurance application he signed, either at the time he purchased the truck, or later, and thereafter refused to read the policy that was mailed to the address he had provided, he cannot recover damages for fraud, under the rationale of Torres v. State FarmFire Casualty Co., 438 So.2d 757 (Ala. 1983). We agree. *Page 96 
Reasonable reliance is an essential element of a fraud action. Torres. In Torres, the plaintiffs brought suit against State Farm Fire Casualty Company for, inter alia, an alleged misrepresentation that flood insurance would be obtained. The trial court granted a summary judgment in favor of State Farm. This Court affirmed, stating, in pertinent part, as follows:
 "For several years prior to the incident in question the plaintiffs, John and Eunice Torres, had purchased their homeowner's and automobile insurance through Clovis Goraum, a State Farm insurance agent. They testified that they relied on Mr. Goraum with regard to their insurance needs. On or about September 12, 1979, Mrs. Torres went to Mr. Goraum's office in connection with an insurance claim related to Hurricane Frederic. She testified in her deposition that 'the first words out of my mouth when I went in the door were, "The first thing I want to tell you is that we want flood coverage." ' According to Mrs. Torres, Elizabeth Hawkins, Mr. Goraum's employee, replied, 'I'll take care of it.' The Torreses admittedly received insurance policies each year from State Farm, but testified that they were unaware that the policies provided no coverage for flood [damage].
 "No further conversations with regard to flood insurance took place between the Torreses and Mr. Goraum's office until the plaintiffs suffered flood damage on May 4, 1981. When Mrs. Torres reported the damage to Mr. Goraum, he told her that she did not have coverage.
 ". . . Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of' reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover. Bedwell Lumber Co. v. T T Corporation, 386 So.2d 413, 415 (Ala. 1980).
 'If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, "volunti non fit injuria." '
Munroe v. Pritchett, 16 Ala. 785, 789 (1849).
 "For purposes of a summary judgment, the facts must, of course, be viewed in a light most favorable to the non-movants. Even so, we are not constrained to overrule the trial court. The conversation in question took place in the wake of a major disaster. The employee who told Mrs. Torres that she would 'take care of it' no doubt was inundated with work at that particular time generated by claims like the Torreses' related to the hurricane. The plaintiffs relied on the statement for over a year and a half, despite the fact that they never received any premium notice for flood coverage and despite the fact that they received a homeowner's policy each year which did not provide for such coverage. We opine that, under the circumstances, the plaintiffs failed to exercise ordinary diligence in relying for so long on Ms. Hawkins's statement, when they received nothing from State Farm indicating that flood coverage had gone into effect. The failure to procure flood insurance which would have covered the loss was attributable to the plaintiffs' carelessness and neglect rather than to the misrepresentation."
Torres is not materially distinguishable from the present case. In Torres, the plaintiffs relied for approximately a year and a half on an alleged representation that flood coverage had been obtained. In the present case, the plaintiff relied for approximately five and a half months on an alleged representation that liability coverage had been obtained. In both Torres and the present case, the plaintiffs received nothing indicating that the desired coverage had been obtained. The plaintiffs did *Page 97 
not read their policy in Torres; the plaintiff in the present case did not read the application he signed at the time he purchased the truck, nor did he read the policy that was subsequently mailed to the address he had provided. The plaintiff in the present case could have readily understood that he was not applying for liability coverage had he only read his application. He testified in his deposition that had he read the policy that was later mailed to him, he would have known that he did not have liability coverage. Although the representation in Torres was made subsequent to a hurricane, that does not materially distinguish that case from the present one. Nor is it material that the plaintiffs in Torres relied for approximately a year longer than the plaintiff in the present case. Five months was sufficient time for the plaintiff to have discovered that he did not have liability coverage. The plaintiff made a conscious decision not to read the application or his policy.
Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of fact must be resolved against the moving party. Fountain v. Phillips,404 So.2d 614 (Ala. 1981). On the authority of Torres we hold, as a matter of law, that because the plaintiff in the present case was put on notice that he did not have liability coverage, his reliance on any statement to the contrary that might have been made by the representative of Midfield Dodge was unreasonable. Therefore, summary judgment in favor of the defendants was proper.
The cases relied on by the plaintiffs, Century Plaza Co. v.Hibbett Sporting Goods, Inc., 382 So.2d 7 (Ala. 1980), andConnell v. State Farm Mut. Auto. Ins. Co., 482 So.2d 1165 (Ala. 1985), are distinguishable from the present case. Century Plaza
involved a shopping center lease and a dispute between the parties over what agreement was reached regarding "common area maintenance." Century Plaza, through its agent, Engel Realty, presented to Ira Hibbett several proposed leases during a two-year period prior to the opening of the Century Plaza Mall in Birmingham in August 1975. Century aggressively solicited Hibbett to open a sporting goods store in its facility. Section 28 of those proposed leases provided that a charge of thirty cents per square foot would be levied on the tenant for common area maintenance. Hibbett refused to enter into an agreement with Century Plaza at that time.
On September 29, 1975, negotiations were resumed and Engel Realty proffered to Hibbett a proposed lease. Hibbett claimed that he asked one Bennett, an agent of Engel Realty, whether Section 28 was unchanged from the earlier proposed leases, and that he was assured by Bennett there was no change, whereupon he signed the lease without reading the contested section. Bennett said he told Hibbett that he would still be charged thirty cents per square foot, but Bennett contended he was not asked whether Section 28 had been changed in the new lease. The lease Hibbett signed exempted the square footage of several of the major department stores in the mall from the formula of calculating the common area maintenance charge; therefore, Hibbett's obligation for common area maintenance was substantially higher than his obligation would have been under the leases proffered to him previously.
The trial court heard ore tenus testimony and found that Engel's agent made a material misrepresentation to Hibbett, upon which Hibbett relied to his detriment. The court found Engel's conduct to be inequitable, unconscionable, and fraudulent. The trial court reformed the lease so that the text of Section 28 as set forth in the proffered lease that was originally discussed with Hibbett was substituted for that in the executed lease. In effect, the court granted Hibbett the relief he requested.
On appeal, counsel for Century Plaza contended that, because Hibbett had had ample opportunity to review for himself the contents of the questioned instrument, he could not complain that the instrument did not represent the agreement consummated *Page 98 
by the parties. This Court disagreed, stating:
 "It is true generally that where a party, having the ability to read and understand an instrument, fails to do so, and signs it without reading it, he cannot avoid the obligations embodied in the instrument by pleading ignorance of its contents. A party is not bound, however, if fraud was practiced upon him. Colburn v. Mid-State Homes, Inc., 289 Ala. 255, 260, 266 So.2d 865 (1972).
 "The record adequately supports the finding of the trial court that fraud was practiced on Hibbett. The court could have found that Hibbett asked whether Section 28 remained unchanged from the earlier proposed leases, and was assured that it was the same, and that he relied on that representation to his detriment by executing the proffered lease without reading the subject section. Since this was an ore tenus case, the findings of fact made by the trial judge are favored with a presumption of correctness and his finding will not be disturbed on appeal unless plainly erroneous or manifestly unjust. Tanner v. Winfield, 365 So.2d 651 (Ala. 1978)." (Emphasis added).
We held in Century Plaza that it was not unreasonable as a matter of law for the plaintiff to rely on the representation of the agent, because the plaintiff in that case was fully aware of what his obligation would have been under the leases as originally proposed. The plaintiff did not act unreasonably by relying on the agent's representation that Section 28 was unchanged[2] in the executed lease.
In Connell, the plaintiff, Charles Connell, sued State Farm Automobile Insurance Company and insurance agent Perry Davis for misrepresentation in the course of issuing him a policy of insurance. Connell met with Davis, who had been a State Farm agent for 19 years, for the purpose of securing a health insurance policy that would pay for a work related injury and make up for the excess beyond workmen's compensation coverage. Connell told Davis what he wanted, and Davis recommended a policy he thought would satisfy Connell. The policy would pay for a disability until age 65, and had an optional 7-, 14-, or 30-day waiting period.
Connell applied for the recommended policy with a 14-day waiting period, and paid the initial premium. Connell understood that State Farm's home office would have to approve the application. State Farm in fact did not approve the application, because the 14-day waiting period was no longer offered; and as a truckdriver, Connell did not qualify for the policy that would pay benefits in addition to workmen's compensation recovery.
State Farm apparently issued two types of disability income policies at that time. The "guaranteed renewable policy," available to doctors, lawyers, teachers, and office workers, paid benefits for injuries covered by workmen's compensation and would pay benefits until age 65. The "optionally renewable policy" was available to truckdrivers, factory workers, and others, and paid benefits for only 5 years and would not pay benefits for injuries covered under workmen's compensation.
Therefore, as a truckdriver, Connell did not qualify for the policy recommended to him by Davis and for which he had applied and paid a premium. To rectify this, State Farm made changes on Connell's application in red ink, with red ink stamped the application "amended," and returned it to Connell along with a form entitled "Amendment of Application for Health Insurance" for Connell to sign and with an optionally renewable disability income policy.
Connell signed the amendment form when Davis presented it to him. The form, *Page 99 
in pertinent part, stated: "I, Charles Connell, hereby amend my application dated August 16, 1982 as follows: Issue with a Minimum Income Period of 5 years. Issue the Optionally Renewable Disability Income Policy." In his deposition testimony Connell was asked about the circumstances of his signing the amendment. He stated that Davis did not explain to him the difference between a "guaranteed renewable policy" and an "optionally renewable policy." In reversing the summary judgment granted to the defendants, this Court stated as follows:
 "State Farm uses contract principles to argue that Connell's reliance on Davis's recommendation was unreasonable because Connell had a duty to read his policy and determine for himself whether he had obtained the coverage he desired. It is true that in order to recover for misrepresentation, a plaintiff's reliance must have been reasonable under the circumstances, and if a reasonably prudent person using ordinary care would have discovered the truth, there is no misrepresentation. Torres [v. State Farm Fire Cas. Co., 438 So.2d 757, at 759 (Ala. 1983)].
 "Under the facts of this case, reasonable men could differ on the issue of whether Connell was justified in his reliance. The evidence shows that Connell informed Davis that he specifically wanted insurance that would pay disability benefits in addition to workmen's compensation recovery. Davis told Connell he had a policy which would do that. Connell relied on this representation by Davis. Subsequently, the insurance company sent the amendment form to Connell for his signature, listing two changes, payment for a 5-year maximum rather than until age 65, and issuance of the optionally renewable policy rather than the guaranteed renewable policy. Davis did not explain the consequence of this latter change to Connell.
 "State Farm, through its agent, knew that Connell specifically wanted coverage for workmen's compensation injuries. Connell expected this coverage and paid for it. The policy amendment form changed the duration of payment, and as far as the unknowing reader could tell, simply changed the renewability feature. Connell could not be expected to know that his amended application was a request for coverage which excluded payment for injuries covered by workmen's compensation. In this respect, and under the facts of this case, we hold that there is a scintilla of evidence to support the misrepresentation claim filed by Connell." (Emphasis added).
We held in Connell, as we did in Century Plaza, that the plaintiff's reliance on the representation of the agent was not unreasonable as a matter of law under the facts presented. The evidence in Connell showed that Connell had read the amended application; however, he could not have been expected to know that that application was, in fact, a request for coverage that excluded payment for injuries covered by workmen's compensation. Connell had informed Davis that he specifically wanted insurance that would pay disability benefits in addition to workmen's compensation benefits. Davis told Connell that he had a policy that would do that. Connell relied on this representation. Davis did not explain to Connell that the application, as amended, was not for the coverage they had previously discussed. Under these facts, it was not unreasonable as a matter of law for Connell to rely on Davis's representation that he would be issued the kind of policy he applied for. Connell is more like Century Plaza and WoodlawnFraternal Lodge than like the present case. The plaintiff in the present case simply did not exercise any degree of precaution to safeguard his interests.
For the foregoing reasons, the defendants' summary judgment is affirmed.
AFFIRMED.
MADDOX and BEATTY, JJ., concur.
ADAMS and ALMON, JJ., concur in result.
[1] Ted cook was the majority shareholder and a director of Midfield Dodge.
[2] Our reasoning in Century Plaza is fully consonant with our reasoning in the recent case of Woodlawn Fraternal Lodge No.525, F. A.M. v. Commercial Union Ins. Co., 510 So.2d 162
(Ala. 1987). In that case we held that because the law casts the burden on an insurer to notify the insured if a renewalpolicy's terms differ from the original policy, the insured's reliance on the insurer's statements that coverage is the same under the renewal policy is not unreasonable, as a matter of law. In other words, if an insured knows the terms of his original policy, it is not unreasonable for him to rely on the insurer's representation that the renewal policy has not been changed. *Page 100