[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 162 
Alpine Bay Resorts, Inc., the developer of a vacation resort on Logan Martin Lake in Talladega County, appeals from a judgment based upon a jury verdict awarding Gary W. Wyatt and Nancy K. Wyatt $25,000 on their claim alleging that Alpine fraudulently misrepresented and breached the terms of a condominium timeshare plan and charter membership contract at the resort.
In May 1983, the Wyatts contracted with Alpine's marketing agent to purchase a fee simple interest in an Alpine condominium for one week during a designated season. The Wyatts testified that the selling agent represented that they would receive a "fixed" week each year during March to use the condominium; Alpine countered by arguing that although the Wyatts contracted for a predetermined "floating" week during a designated season, they had to "reserve" the week in advance according to the terms of the contract. In other words, Alpine alleges that the Wyatts were not guaranteed the specific week in March, but were guaranteed only the right to reserve the week in the designated season, subject to availability.
The Wyatts testified that, under the terms of the charter membership program at Alpine, they were promised that all fees for playing golf (greens and cart fees) would be discounted 30% for weekday play and 15% for weekend play, regardless of any special rates run by the golf course, and that the discount applied to their guests. The Wyatts allege that Alpine then refused to apply the charter member discount when special rates were run at the course and refused to give their guests the discount. Alpine asserted that the Wyatts received their golf discount, but that the charter membership did not require Alpine to discount a special rate or apply the discount to charter members' guests. Alpine's golf professional testified that she refused to give Mr. Wyatt the discount on days when a special rate was in effect and refused to discount golf fees for his guests.
After attempting to reserve their "fixed" week at the resort and being told that the condominium was not available at that time, the Wyatts ceased payment on the timeshare contract and sued Alpine. Alpine counterclaimed for the balance due on the contract. The trial court rendered judgment on a jury verdict in the Wyatts' favor on the claim and the counterclaim and denied Alpine's motion for judgment notwithstanding the verdict or, alternatively, for new trial.
The primary issue for review is whether the trial court, with respect to the Wyatts' fraud and breach of contract claims, erred in denying Alpine's alternative motion for JNOV on the sufficiency-of-the-evidence ground or for a new trial on the weight-of-the-evidence ground.[1] The standard of review applicable to a motion for JNOV is identical to the standard used by the trial court in granting or denying a directed verdict motion initially. Turner v. Peoples Bank of Pell City,378 So.2d 706 (Ala. 1979). Granting a motion for JNOV is proper "only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ" and the moving party is entitled to judgment as a matter of law. Deaton, Inc. v.Burroughs, 456 So.2d 771 (Ala. 1984).
But where they are unchallenged on a sufficiency-of-the-evidence ground, or when the evidence meets the "sufficiency" test, jury verdicts are presumed correct, and this presumption is strengthened by the trial court's denial of a motion for new trial. Therefore, a judgment based upon a jury verdict and sustained by the denial of a post-judgment motion for a new trial, will not be reversed on a weight-of-the-evidence ground unless it is "plainly and palpably" wrong. Ashbee v. Brock, 510 So.2d 214 *Page 163 
(Ala. 1987). See, also, Jawad v. Granade, 497 So.2d 471 (Ala. 1986).
 I
Our recent cases hold, generally, that a purchaser is not authorized to disregard the express terms of a written contract and rest a claim on fraud, claiming only that he relied on a statement contrary to the contract terms. The purchaser's reliance upon a contrary statement, even if the statement is false, must be "reasonable" under the circumstances, before the law will require the speaker to respond in damages for fraud. Webb v. Reese, 505 So.2d 321
(Ala. 1987). See, also, Traylor v. Bell, 518 So.2d 719 (Ala. 1987); Turner v. Landmark Chevrolet, Inc., 514 So.2d 1337 (Ala. 1987); and Hinson v. Center Court Productions, 514 So.2d 1374
(Ala. 1988).
In Syx v. Midfield Volkswagen, Inc., 518 So.2d 94 (Ala. 1987), a representative of Midfield Volkswagen prepared the plaintiff's documents of sale for the purchase of a pick-up truck and his application for automobile insurance, which clearly showed that only "comprehensive and collision" coverage was applied for. Although he was given the opportunity, the plaintiff did not read the insurance application prior to signing it and did not read the policy when it was delivered by mail. Following an accident five months after the purchase, the plaintiff discovered that the policy did not include liability coverage. He claimed fraud, because, he said, Midfield Volkswagen's representative told him at the time he purchased the truck that he was applying for "full coverage," including liability coverage.
In affirming the summary judgment for Midfield Volkswagen, we found that five months was sufficient time for the plaintiff to have discovered that he did not have liability coverage and that he had made a conscious decision not to read the application or his policy. Therefore, we held, as a matter of law, that because the policy put the plaintiff on notice that he did not have liability coverage, his failure to exercise "any degree of precaution to safeguard his interests" rendered his reliance on any statement to the contrary by Midfield Volkswagen's representative "unreasonable."Syx, 518 So.2d at 97-99.
In deciding whether the Wyatts' reliance on Alpine's representations was reasonable, we are guided by Torres v.State Farm Fire Cas. Co., 438 So.2d 757 (Ala. 1983), which was followed by Syx and the related cases cited above:
 "Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercises ordinary care would have discovered the true facts, the plaintiffs should not recover. Bedwell Lumber Co. v. T T Corporation, 386 So.2d 413, 415 (Ala. 1980)."
438 So.2d at 758-59.
The contract signed by the Wyatts indicates their "floating" use week for unit number 111 to be the tenth week of 1984, or March 4 through 10. The "Vacation Ownership Purchase and Sale Agreement," signed by the Wyatts, indicates that the use week was "subject to prior reservation and use in accordance with the terms of the Reservation Procedures." No document signed by the Wyatts explains that the condominium had to be reserved 15 days in advance and that their use of the unit might be preempted by a third party making an earlier reservation. In fact, reservation instructions were not forwarded to the Wyatts until after Mrs. Wyatt attempted to reserve the unit for the designated week and was told that the resort was "booked up."
Further, Mr. Wyatt testified that his "main purpose" in purchasing the condominium was to receive a charter membership, which, according to the marketing agent, Mr. Wyatt said, assured him that the golf discount would apply against special *Page 164 
rates applicable to greens fees and golf cart rentals. We note that the reservation instructions, which also provided for the golf discount, contained no exceptions applicable to special rates. Indeed, Alpine could effectively abort all charter membership "discount" advantages to the Wyatts through its application of the "special rates" scheme, not provided for in the contract.
Under these facts, the Wyatts' reliance on the representations of the marketing agent was not unreasonable as a matter of law. Although the evidence showed that the Wyatts read the sales contract, they could not have been expected to know that it was not, in fact, for ownership of a designated use week at the resort. The Wyatts had informed the marketing agent that they wanted a specific, "fixed" week in which to use the condominium, and that receiving the charter membership was paramount in their decision to purchase the use week. The Wyatts testified that the marketing agent assured them that they were purchasing a "fixed" use week, subject only to prior reservation, and would receive the charter membership's golf discount at all times. The Wyatts testified that they relied on these representations. Thus, unlike the plaintiff in Syx v. Midfield Volkswagen, Inc.,supra, the Wyatts attempted, under these circumstances, to exercise a degree of precaution to safeguard their interests regarding the use week and the charter membership, but ultimately failed to discover the facts of the transaction as Alpine later claimed them to be.
Based on these considerations, we hold that the evidence was sufficient to support the Wyatts' allegations of fraud and breach of contract by Alpine, and, therefore, that the trial court properly denied Alpine's motion for JNOV. SeeDeaton, Inc. v. Burroughs, supra. Further, we hold that the challenged verdict is not so against the weight and preponderance of the evidence as to overcome the presumption of correctness attached to the jury's verdict, and, therefore, that the trial court properly denied Alpine's motion for new trial. See Jawad v. Granade, supra.
 II
Alpine also argues that the trial court erred in allowing parol evidence to vary the terms of a written contract, that any contract based upon the alleged representations violates the Statute of Frauds, and that, under the doctrine of "merger," the rights of the parties rest solely on the terms of the written contract.
First, we have long held that "absent some evidence of fraud
in procuring a party's signature or concealing or misrepresenting the contents of the contract, a party to the contract cannot contradict the instrument by parol agreement made at the time of execution and that evidence which tends to contradict, vary, or alter the terms of the contract is not admissible." Smith v. Citicorp Person-To-Person FinancialCenters, Inc., 477 So.2d 308, 311 (Ala. 1985). (Citations omitted, emphasis added.) In the present case, the evidence presented by the Wyatts, particularly in view of the ambiguity of the written contract, is sufficient to bring the real estate transaction within the fraud exception to the parol evidence rule. Indeed, after a careful study of the documents signed by the Wyatts, we agree with the implicit finding of the trial court that the terms of the written contract do not stand in clear contradiction to the oral representation as testified to by the Wyatts.
Second, the representation made by Alpine to the Wyatts regarding the designated condominium use week was not and cannot be characterized as an oral contract for the sale of land within the meaning of Code 1975, § 8-9-2(5). A written sales contract was being executed for ownership of the week. Third, under the doctrine of "merger," ordinarily, in the absence of fraud or mistake, when a contract to sell and convey real estate has been consummated by the execution and delivery of a deed, "the preliminary contract becomes functus officio, and the deed becomes a sole memorial of the agreement." Russellv. Mullis, 479 So.2d 727 (Ala. 1985). The presence or absence of fraud, as an exception to the doctrine, however, is a *Page 165 
question to be determined by the trier of fact, and the record adequately supports the finding that fraud infected the transaction between Alpine and the Wyatts. See Roberts v.Peoples Bank Trust Co. of Sylacauga, 410 So.2d 393 (Ala. 1982).
AFFIRMED.
TORBERT, C.J., and SHORES, ADAMS and STEAGALL, JJ., concur.
[1] With regard to the JNOV motion, we note that Alpine timely moved for a directed verdict at the close of the evidence, thus preserving the "sufficiency" ground for post-judgment review.