579 So.2d 590 (1990)
George L. CURTIS, Jr.
v.
BILL BYRD AUTOMOTIVE, INC., et al.
89-1581.
Supreme Court of Alabama.
December 21, 1990.
Dissenting Opinion May 27, 1991.
*591 Timothy M. Grogan, Mobile, for appellant.
Ralph Loveless of Loveless & Banks, Mobile, for appellees.
STEAGALL, Justice.
This is an appeal from a summary judgment entered in favor of defendants Bill Byrd Automotive, Inc., and Bill Wilson on the fraud and contract claims of George L. Curtis, Jr., with regard to Curtis's purchase of a 1985 Nissan Sentra station wagon from Bill Byrd Automotive. On appeal, Curtis complains only of the ruling on the fraud claim; therefore, we need not address the contract claim. The only issue raised is whether a genuine issue of material fact existed as to whether Curtis "reasonably relied" on alleged misrepresentations made by representatives of Bill Byrd Automotive.
Appellees, however, by motion to dismiss the appeal, raise a procedural issue: whether the notice of appeal that referenced only the final order of the courtan order dismissing the case as to an unserved defendantwas jurisdictionally flawed. Specifically, the appellees point out that the plaintiff's notice of appeal stated that the plaintiff was appealing from the court's order of March 14, 1990 (dismissing an unserved defendant), and, from this fact, they argue that the plaintiff cannot raise on appeal issues relating not to that order of dismissal but to the March 2, 1990, summary judgment in favor of the appellees. Initially, we address the procedural issue.
Citing pertinent rules of civil and appellate procedure and Edmondson v. Blakey, 341 So.2d 481 (Ala.1976), the appellees argue the following in support of their motion to dismiss:
"Prior to March 1, 1982, the fact that [one defendant was unserved] would have prevented a final judgment from being entered except upon the trial court's express finding [that there is no just reason for delay] and [its] direction [for entry of judgment]. However, the March 1982 amendment to rules 54(b) and 4(f), A.R.Civ.P., worked a change so that the existence of an unserved defendant no longer prevents the finality that would otherwise attach upon a summary judgment being granted in favor of all the other defendants. Thus, the March 2, 1990, order granting summary judgment in favor of Byrd and Wilson was a final judgment and ended the proceeding as to them.
"Inasmuch as Bill Byrd Automotive, Inc., and Bill Wilson had final judgments *592 in their favor some twelve days prior to the trial court's granting Curtis's motion to dismiss his own complaint against the unserved defendant, any ruling by this Court on the appeal from the trial court's March 14, 1990, order so dismissing as to [the unserved defendant] could have no effect whatsoever upon [Bill Byrd Automotive, Inc.] and Wilson. They were already out of the case. Even a reversal by this Court and a remand for trial as to [the unserved defendant] would not change their status. Accordingly, their motion to dismiss the appeal is due to be granted."
The appellees' argument is indeed a persuasive one, and, undoubtedly, under the Court's strict application of the rules that preceded our present rules of civil and appellate procedure, the appellees' motion to dismiss the appeal would have been granted. Here, however, we believe the "purpose and spirit" approach to the interpretation and application of our procedural rules requires that we hold the challenged notice of appeal sufficient to present the March 2, 1990, summary judgment for review. Although Curtis mistakenly believed that an order of dismissal of the unserved defendant was essential to effect a final, appealable judgment, his notice of appeal correctly listed as appellees only the two served defendants in whose favor summary judgment had been entered.
Upon receipt of the notice of appeal, neither this Court nor the appellees were misled with respect to who the parties were on appeal (a fact that distinguishes this case from Edmondson, supra); nor can it be fairly argued that the appellees were left in doubt with respect to which judgment Curtis was challenging on appeal. We observe also that the notice of appeal was filed within the 42-day period after the summary judgment was entered.
Moreover, the spirit of the rules is reflected in Rule 3(c), A.R.App.P.: "Such designation of judgment or order [i.e., the designation in the notice of appeal of the "judgment ... appealed from"] shall not, however, limit the scope of appellate review"; and in Rule 4(a)(1): "On an appeal from a judgment or order a party shall be entitled to a review of any judgment, order, or ruling of the trial court."
We now address the merits of the substantive issue presented by Curtis. According to Curtis's deposition testimony, after seeing an advertisement in a sales magazine for a 1985 Nissan Sentra station wagon, he visited the dealership of Bill Byrd Automotive in Mobile, Alabama. Upon arriving at the automobile sales lot, Curtis met Robert Moody, a salesman of Bill Byrd Automotive. Curtis expressed to Moody his interest in the advertised vehicle and Moody "showed" him the vehicle. Curtis said that he examined the vehicle and that, while he did so, he commented to Moody that it "seemed to have low mileage" and to be "in good shape," and he said that he told Moody he "wondered if it had been wrecked." Moody did not respond to the comment. Curtis alleged that he and Moody then test drove the vehicle and continued to generally discuss the features of the car. According to Curtis, at no point did Moody ever acknowledge Curtis's comment about wondering if the vehicle had been wrecked. Soon after the test drive, Curtis left the sales lot.
Several days later, Curtis returned to the dealership to inspect the Nissan vehicle again. Moody and Curtis took it for a second test drive, during which Curtis drove it to his residence to show his wife. While at his residence, Curtis said, he checked the vehicle for "oil leaks" and "water leaks." After positioning himself "underneath" the vehicle, Curtis said, he discovered an oil leak and pointed it out to Moody. Curtis said that Moody assured him that the leak was "no problem" and would be fixed by the dealership. Moody and Curtis then returned to Bill Byrd Automotive.
According to Curtis, upon returning to the dealership, he and Moody met with Bill Wilson, the service manager of the dealership, and Curtis informed Wilson of the problem with the oil leaking from the station wagon. Wilson, too, Curtis says, assured him that the leak was "no problem" and would be repaired by the dealership.
*593 Curtis says that Wilson then escorted him to the finance manager's office to arrange financing to enable Curtis to purchase the station wagon and that Wilson also urged Curtis to purchase a "service warranty" because, Curtis says, while Wilson claimed that he had "checked the car out and it was in good shape," Wilson said the warranty would cover any repairs that might be needed. Curtis did not purchase the warranty, but bought the Nissan Sentra for $6,600 and signed an "`AS IS' USED VEHICLE RETAIL BUYER'S ORDER," along with a "Buyer's Guide."
Curtis said that over the next 18 months he replaced the clutch and transmission assembly on the Nissan Sentra on four occasions, and, realizing that there was a serious problem with the vehicle, had it inspected by Pat Jones of P & M Auto. There was evidence that this inspection revealed that the automobile "had sustained major damage to its internal components and to the body of the automobile, and [that] it appeared that the damage was a result of the car being wrecked." Curtis claims that because of the condition of the vehicle, it is "impracticable" to attempt to further repair it. Curtis further asserts that had he known the vehicle had been wrecked and rebuilt, he would not have purchased it.
After learning of the condition of the vehicle, Curtis sued Bill Byrd Automotive, Bill Wilson, and Robert Moody, claiming breach of contract and fraud. Moody was subsequently dismissed from the action as to both counts because Curtis had failed to obtain service on him. The breach of contract action was also dismissed as to Wilson, but not as to Bill Byrd Automotive. The fraud claim was predicated upon Wilson's statement that he had checked the vehicle and had found it to be in "good shape," implying, Curtis says, that it had not been previously wrecked. Bill Byrd Automotive and Wilson generally deny the allegation and defend their actions on the concept of "caveat emptor." Both assert that Curtis purchased the vehicle "as is" and that there is no evidence to support a claim of fraud.
Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, A.R. Civ.P.. Once the moving party has made a prima facie showing that no genuine issue of material fact exists, the burden of proof shifts to the nonmovant to provide "substantial evidence" in support of his position, so as to show that there is a question of fact. Ala.Code 1975, § 12-21-12; Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990); Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala. 1989). The trial court is required to view all of the evidence offered by the moving parties in support of their motion in the light most favorable to the nonmovant, Curtis; and the burden of proving the nonexistence of justifiable reliance[1] by Curtissuch reliance being an element of Curtis's fraud actionrested with Bill Byrd Automotive and Wilson as the moving parties. Hanners and Bass.
Curtis says that Moody, in his conversation with Curtis, failed to acknowledge Curtis's inquiry as to whether the car had been "wrecked." Bill Byrd Automotive and Wilson offered no evidence to dispute Curtis's claim; they merely made a general denial. In the case of Standard Motorcar Co. v. McMahon, 203 Ala. 158, 82 So. 188 (1919), this Court addressed the question of liability resulting from suppression of a material fact:
"Good faith on the part of the seller and his agent demanded that said agent and the principal not only abstain from making positive misrepresentations of material facts, willfully to deceive or recklessly without knowledge, as to the capacity and condition of the car, but also that there be no suppression of a fact material to be known and which such seller was under obligation to communicate, in relation to the physical condition of the car, *594 and particularly its batteries, as that was an inducement to plaintiff to enter into the contract of purchase. One who is negotiating a sale must not recklessly, without knowledge, assert a fact material to be known, the obligation to communicate which may arise from the confidential relation of the parties, or from the particular circumstances of the case, and, if suppressed, will constitute a fraud in law."
203 Ala. at 160, 82 So. at 190. Cited in Peterbilt Motors Co. v. Martin, 521 So.2d 946, 950 (Ala.1988). This rule has particular importance to the instant case in regard to the representations as to the condition of the vehicle, a condition that could not have been known by Curtis. More importantly, here, Curtis went a step further and inquired whether the vehicle had been wrecked, but his inquiry was ignored by Moody.
It is clear from the record that Curtis says that his belief that the vehicle was in good condition served as an inducement for him to purchase it. Therefore, it was incumbent upon Moody to disclose any and all information that he had concerning the condition of the automobile, considering the inquiry by Curtis. Ala.Code 1975, § 6-5-102; Peterbilt Motors Co., 521 So.2d at 950.
The ultimate question is whether there is evidence that the dealership and its representatives knew of the condition of the automobile. If Bill Byrd Automotive and its representatives knew of the condition of the vehicle, they had a duty to disclose it, especially in light of the inquiry by Curtis. "Affirmative misrepresentation is not the only basis for fraud, which can also exist in the concealment of material facts for which there is a duty to disclose." Courtesy Ford Sales, Inc. v. Clark, 425 So.2d 1075, 1077-78 (Ala.1983); Ala.Code 1975, § 6-5-102. There was evidence that the dealership represented to Curtis that the automobile was in "good shape" and that the dealership had "checked the car out," indicating that the dealership had conducted an inspection of the vehicle. A jury could conclude that an inspection by the dealership's trained personnel would have revealed what mechanic Jones said he found, that the vehicle had been wrecked. Whether Bill Byrd Automotive and its representatives knew or should have known that the car had been wrecked is a factual issue that should be determined by a jury.
Reviewing the evidence in the light most favorable to Curtis, we find substantial evidence to support Curtis's claim of fraud predicated on the dealership's alleged failure to disclose information about the condition of the automobile; we further find substantial evidence of justifiable reliance (see Hickox v. Stover, 551 So.2d 259 (Ala. 1989)) by Curtis on the alleged failure to disclose and also on the alleged representation of Moody and Wilson, agents of Bill Byrd Automotive.
Therefore, it was error for the trial court to enter the summary judgment on the fraud claim. That claim should be resolved by a jury.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, ALMON, SHORES, HOUSTON and KENNEDY, JJ., concur.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
The undisputed facts in this case show that the purchaser of this automobile executed a sales contract that contained the following provision immediately above his signature:
"The Seller, BILL BYRD ACURA, Hereby Expressly Disclaims All Warranties, Either Expressed or Implied, Including Any Implied Warranty [of] MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, and BILL BYRD ACURA, Neither Assumes Nor Authorize[s] Any Other Person To Assume For it Any Liability in Connection With this Sale.
"....
"THE VEHICLE BEING SOLD UNDER THIS AGREEMENT IS BEING PURCHASED & ACCEPTED BY THE PURCHASER `AS IS.'" *595 See "`As Is' Used Vehicle Retail Buyers Order" attached hereto as Appendix B.
Furthermore, it is undisputed that there was a "Buyers Guide" window sticker on this used car, as required by Federal law, and I attach a copy of it to this dissent as Appendix A. This notice to the purchaser is on the exact form required by the Federal Trade Commission in a Rule governing the sale of used automobiles (16 C.F.R. § 455, "Used Motor Vehicle Trade Regulation Rule"). The words "AS ISNO WARRANTY" are in letters 7/16th of an inch in height (seven times the size of the text in the document) and, insofar as I can tell, this "Buyers Guide" complies fully with the Rule. See 16 C.F.R. § 455.2, "Consumer SalesWindow Form," which specifies the size of the form, the size of the print on the form, etc.
I have checked all the other requirements of 16 C.F.R. § 455, and it appears to me that all of the requirements of that Rule, which are obviously designed to protect the buyer of a used automobile, were followed. The Rule requires that the seller of a used vehicle give to the buyer a window form containing "all of the disclosures required by the Rule and the warranty coverage agreed upon." See 16 C.F.R. § 455.3, "Window form," attached hereto as Appendix C.
Not only did Curtis read and sign the "window form" and the sales contract, but he test drove the car on two occasions and checked under the hood and under the car "for oil leaks, or water leaks or anything."
I am of the opinion that, as a matter of law, Curtis failed to present substantial evidence of his claim of fraud in the inducement, in that he failed to present substantial evidence that Bill Byrd Automotive intentionally deceived him or acted so recklessly that its actions should be taken as an intentional deception. The only evidence offered by Curtis in support of his claim was the alleged silence by the salesman, Mr. Moody, and the alleged oral statement made by the service manager, Mr. Wilson, concerning the condition of the used car.[2] Curtis seeks not only to supplement the terms of the written sales contract signed by him by these alleged representations, but specifically to contradict the window sticker read and signed by him, which the Federal Rule says was to contain the "warranty coverage agreed upon."[3] This Court has held that "[i]f a written contract exists, the rights of the parties are controlled by that contract; and parol evidence is not admissible to contradict, vary, add to, or subtract from its terms" and that "fraud or misrepresentation cannot be predicated upon a verbal statement made before execution of a written contract when a provision in that contract contradicts the verbal statement." Tyler v. Equitable Life Assurance Soc. of the United States, 512 So.2d 55, 57 (Ala.1987).
It appears to me that the majority, by permitting the buyer in this case to allege and prove silence in response to his questioning and to prove oral statements and representations made before the sale was consummated that are directly inconsistent with the warranty information contained on all the documents required by federal law, has effected a major change in the law of parol evidence.
It is my judgment that evidence of these alleged representations is not admissible to prove fraud in the inducement. The purpose of written contracts, in my opinion, is to prevent lawsuits and "swearing *596 matches." The parol evidence rule is specifically designed to prevent swearing matches when negotiations and agreements have been reduced to writing. The parol evidence rule is especially applicable here because of the federally imposed requirements of disclosure, particularly the requirement to furnish the window form to the buyer.[4]
The subject of this sale was a used automobile, the sale of which is strictly regulated by federal laws and regulations. In regard to the sale of used automobiles, the Federal Trade Commission has specified the kind and size of type and size of the notice that must be attached to the window of a used automobile. The record reveals that this required notice was read and signed by the buyer in this case; therefore, I cannot accept the majority's conclusion in this case that "[i]t is clear from the record that Curtis says that his belief that the vehicle was in good condition served as an inducement for him to purchase it."
Assuming, however, that the evidence of the alleged representations is admissible, where is the proof of justifiable reliance? The plaintiff twice test drove the vehicle, and he stated that he "raised the hood on the car and looked from the top and got underneath the car" to "check the car further for oil leaks, or water leaks or anything." Furthermore, expressly stated on the "As Is" window sticker is the following:
"PRE PURCHASE INSPECTION: ASK THE DEALER IF YOU MAY HAVE THIS VEHICLE INSPECTED BY YOUR MECHANIC EITHER ON OR OFF THE LOT."
Thus, the evidence reveals that although Curtis had the opportunity to have the vehicle inspected by his own personal mechanic, he had the vehicle inspected only after he had purchased it.
Based on the foregoing, I think that the majority errs in reversing the summary judgment in favor of Bill Byrd Automotive. In short, I find no substantial evidence from which a jury could reasonably infer that Curtis was induced through fraud to purchase the used car from Bill Byrd Automotive. The essential elements of a fraud claim were recently set forth by this Court in Ramsay Health Care, Inc. v. Follmer, 560 So.2d 746, 749 (Ala.1990):
"The essential elements of a fraud claim are: (1) misrepresentation of a material fact; (2) made willfully to deceive, or recklessly without knowledge; (3) which was justifiably relied upon by the plaintiff under the circumstances; and (4) which caused damage as a proximate consequence. Bowman v. McElrath Poultry Co., 468 So.2d 879 (Ala.1985)."
I do not think that there is substantial admissible evidence on each of the elements of Curtis's fraud claim that would create a conflict warranting a jury determination of his claim.
I agree with Bill Byrd Automotive's argument that evidence of the alleged representations made by its agents to Curtis is inadmissible, because I do not believe that this Court should sanction a complete disregard of the express terms of a written contract, especially when the disclosures required by federal law were admittedly made.
This Court, in Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160 (Ala.1988), stated the applicable rule:
"Our recent cases hold, generally, that a purchaser is not authorized to disregard the express terms of a written contract and rest a claim on fraud, claiming only that he relied on a statement contrary to the contract terms. The purchaser's reliance upon a contrary statement, even if the statement is false, must be `reasonable' under the circumstances, before the law will require the speaker to respond in damages for fraud. Webb v. Reese, 505 So.2d 321 (Ala.1987). See, also, Traylor v. Bell, 518 So.2d 719 (Ala. 1987); Turner v. Landmark Chevrolet, Inc., 514 So.2d 1337 (Ala.1987); and Hinson *597 v. Center Court Productions, 514 So.2d 1374 (Ala.1988).
"In Syx v. Midfield Volkswagen, Inc., 518 So.2d 94 (Ala.1987), a representative of Midfield Volkswagen prepared the plaintiff's documents of sale for the purchase of a pick-up truck and his application for automobile insurance, which clearly showed that only `comprehensive and collision' coverage was applied for. Although he was given the opportunity, the plaintiff did not read the insurance application prior to signing it and did not read the policy when it was delivered by mail. Following an accident five months after the purchase, the plaintiff discovered that the policy did not include liability coverage. He claimed fraud, because, he said, Midfield Volkswagen's representative told him at the time he purchased the truck that he was applying for `full coverage,' including liability coverage.
"In affirming the summary judgment for Midfield Volkswagen, we found that five months was sufficient time for the plaintiff to have discovered that he did not have liability coverage and that he had made a conscious decision not to read the application or his policy. Therefore, we held, as a matter of law, that because the policy put the plaintiff on notice that he did not have liability coverage, his failure to exercise `any degree of precaution to safeguard his interests' rendered his reliance on any statement to the contrary by Midfield Volkswagen's representative `unreasonable.' Syx, 518 So.2d at 97-99.
"In deciding whether the Wyatts' reliance on Alpine's representations was reasonable, we are guided by Torres v. State Farm Fire & Cas. Co., 438 So.2d 757 (Ala.1983), which was followed by Syx and the related cases cited above:
"`Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interest, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercises ordinary care would have discovered the true facts, the plaintiffs should not recover. Bedwell Lumber Co. v. T & T Corporation, 386 So.2d 413, 415 (Ala.1980).'"
539 So.2d at 163.
In Blake v. Coates, 292 Ala. 351, 294 So.2d 433 (1974), this Court held that "in the absence of fraud in procuring the signature to a contract by misrepresenting or concealing its contents, it cannot be impeached by proving a different contemporaneous agreement, or because the party signing was ignorant of its legal effect." 292 Ala. at 353, 294 So.2d at 435. As this Court noted there: "`If this were not the law, "contracts would not be worth the paper on which they were written."'" The majority thinks that this case comes within the "fraud" exception to the parol evidence rule. I respectfully disagree with them.
The evidence is clear that, before purchasing the car George Curtis executed two instruments, which I attach to this opinion as Appendices A and B. They speak for themselves. How he could not see the words "AS ISNO WARRANTY," when the letters are 7/16 of an inch in height (seven times larger than the ordinary print), escapes me.
Even assuming, however, that evidence of the alleged oral statements to Curtis is admissible, I would still conclude that Curtis failed to present evidence indicating that Bill Byrd Automotive either "willfully" or "recklessly without knowledge" perpetrated a fraud against him. At most, that evidence would show only a breach of warranty. Where is the evidence of fraud? I do not find substantial evidence that suggests or reasonably implies that Bill Byrd Automotive intentionally or recklessly misrepresented the used car's condition to Curtis at the time of its purchase.
My ultimate conclusion that the majority opinion is incorrect is based substantially *598 on the fact that the purchaser here admittedly read and signed two documents acknowledging that no representations were, in fact, made to him. That conclusion is further buttressed by the fact that the Federal Government, by a duly promulgated regulation, which was followed in this case, has determined what is and what is not sufficient to protect purchasers of used cars in this country.[5]
I think that the majority opinion establishes a bad precedent. Its effect is to permit a buyer of a used car, the sale of which is strictly regulated by Federal law, to claim that warranties were made about it even though the window form required by Federal law affirmatively shows that the buyer purchased the car "AS ISNO WARRANTY" and signed a statement acknowledging that "THIS `AS IS' RETAIL BUYERS ORDER IS AN OFFER BY ME TO PURCHASE THE VEHICLE DESCRIBED HEREIN ON THE TERMS AND CONDITIONS AS SPECIFIED."
For all of the foregoing reasons, I would hold that the trial court properly entered the summary judgment in favor of Bill Byrd Automotive as to Curtis's allegations of fraud in the inducement.

*599 APPENDIX A

*600 APPENDIX B

*601 Federal Traded Commission
of your place of business (for example, your service station) or your own name and home address.
(d) Make, Model, Model Year, VIN. put the vehicle's name (for example. Chevrolet"), model (for example, "Vega"), model year. and Vehicle Identification Number (VIN) in the spaces provided. You may write the dealer stock number in the space provided or you may leave this space blank.
(e) Complaints. In the space provided. put the name and telephone number of the person who should be contacted if any complaints arise after sale.
§ 455.3 Window form.
(a) Form given to buyer. Give the buyer of a used vehicle sold by you the window form displayed under § 455.2 containing all of the disclosures required by the Rule and reflecting the warranty coverage agreed upon. It you prefer, you may give the buyer a copy of the original, so long as that copy accurately reflectes all of the disclosures required by the Rule and the warranty coverage agreed upon.
(b) Incorporated into contract. The information on the final version of the window form is incorporated into the contract of sale for each used vehicle you sell to a consumer. Information on the window form overriders any contrary provisions in the contract of sale. To inform the consumer of these facts. include the following language conspicuously in each consumer contract of sale:
The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sal
§ 455.4 Contrary statements.
You may not make any statements, oral or written, or take other actions which alter or contradict the disclosures required by §§ 455.2 and 455.3. You may negotiate over warranty coverage, as provided in § 455.2(b) of this part, as long as the final warranty terms are identified in the contract of sale and summarized on the copy of the window form you give to the buyer.
§ 455.5 Spanish language sales.
If you conduct a sale in Spanish, the window form required by § 455.2 and the contract disclosures required by § 455.3 must be in that language. You may display on a vehicle both an English language window form and a Spanish language translation of that form. Use the following translation and layout for Spanish language sales: 4
4 Use the following language for the "Implied Warranties Only" disclosure when required by § 455.2(b)(1):
Garantias implicitas solamente
Este termino significa que el vendedor no hace promesas especificas de arreglar lo que requiera reparacion cuando usted compra el vehiculo o despues del momento de la venta. Pero. las "garantias implicitas" de la ley estatal pueden darle a usted algunos derechos y hacer que el vendedor resuelva problemas graves que no fueron evidentes cuando usted compro el vehiculo.
Use the following language for the "Service Contract" disclosure required by § 455.2(b)(3):
CONTRATO DE SERVICIO. Este vehiculo tiene disponible un contrato de servicio a un precio adicional. Pida los detalles en cuanto a cobertura, deducible. precio y exclusiones. Si adquiere usted un contrato de servicio dentro de los 90 dias del momento de la venta, las "garantias implicitas" de acuerdo a la ley del estado pueden concederle derechos adicionales.
NOTES
[1] Although both sides refer to the standard in fraud cases as being "reasonable reliance," the correct standard by which reliance is assessed in fraud cases is "justifiable reliance." Hickox v. Stover, 551 So.2d 259 (Ala.1989).
[2] Curtis alleges that Mr. Moody failed to respond to his question as to whether the car had ever been wrecked and that Mr. Wilson stated that he had "checked the car out and it was in good shape."
[3] Included in the provisions of the sales contract that Mr. Curtis read and signed was a boldly printed provision that stated the following:

"THE VEHICLE BEING SOLD UNDER THIS AGREEMENT IS BEING PURCHASED & ACCEPTED BY THE PURCHASER `AS IS'"
Also included on the contract is the following language required by 16 C.F.R. § 455.3:
"The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale."
See Appendix B.
[4] Many governmental regulations, such as the Truth-in-Lending Act, specifically require that consumers receive certain disclosures considered by the regulators to be sufficient to put the consumers on notice of the terms of their contracts.
[5] The Federal Rule required Bill Byrd Automotive to put this statement on the sales contract form: "The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale." (Emphasis added.) 16 C.F.R. § 455.3. The sales contract ("buyer's order") contained this required language. It was printed on the contract form and was not difficult to read.