[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 693 
Annie B. Smith sued MBL Life Assurance Corporation ("MBL") and its parent company, Mutual Benefit Life Insurance Company ("Mutual Benefit Life"), seeking to recover the proceeds of a $250,000 life insurance policy in which she was named as the beneficiary. Her brother, Robert D. Burchfield, was the insured under this policy. Smith asserted breach of contract, fraud, outrage, and bad faith claims against both defendants.
The trial court entered a summary judgment for the defendants on Smith's outrage claim, and the case proceeded to trial on the remaining three claims. At the conclusion of all of the testimony, the trial court directed a verdict in favor of the defendants on the bad faith claim and submitted the breach of contract claim and the fraud claim to the jury. The jury returned a verdict for Smith on both claims, assessing compensatory damages for breach of contract at $250,000 and punitive damages for fraud at $4,500,000. The trial court entered a final judgment against the defendants, after deducting $40,000 from the damages awarded by the jury, pursuant to the pro tanto settlement agreement that Smith had entered into with the defendants' soliciting agent, James R. Starnes.
Thereafter, the defendants filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, challenging the sufficiency of the evidence supporting the breach of contract claim and the fraud claim, and alleging that the punitive damages award was excessive. Pursuant to the defendants' motion, the trial court set aside its judgment and entered a judgment for the defendants notwithstanding the verdict on the fraud claim, on the ground that the jury's decision was not supported by the evidence. However, the *Page 694 
trial court entered a judgment on the jury's verdict on the breach of contract claim.
Subsequently, Smith appealed from the judgment notwithstanding the verdict on the fraud claim and from the entry of a directed verdict on the bad faith claim. The defendants cross-appealed from the trial court's denial of their motion for a directed verdict, motion for a judgment notwithstanding the verdict, and motion for a new trial on the breach of contract claim. Three issues are raised in this appeal: (1) whether there was sufficient evidence to support the finding of an insurance contract between Burchfield and the defendants; (2) whether the trial court erred in entering a judgment notwithstanding the verdict on Smith's fraud claim; and (3) whether the trial court erred in directing a verdict in favor of the defendants on Smith's bad faith claim.
The record reveals the following pertinent facts: On April 27, 1983, Burchfieid met with Starnes to discuss the possibility of obtaining life insurance. At that time, Burchfield completed an application for a $250,000 "increasing premium whole life" insurance policy that was to be issued by MBL. When his application was taken, Burchfield gave Starnes a check in the amount of $73.10, made payable to "Mutual Benefit Life," to cover the first month's premium. In return, MBL, through Starnes, issued Burchfield a prepayment receipt. The prepayment receipt, which is the basis of Smith's suit, provides, in pertinent part:
"2. Conditional Insurance
 "We will issue, as of the effective date, a policy as applied for if: (a) we receive both Part 1 and Part 2 of the application; and (b) we could have issued such a policy on the effective date under our underwriting standards. . . .
 "If we could not have issued a policy as applied for, we will issue, as of the effective date, a policy based on the application amended to provide for a different premium class or the elimination or reduction of any portion or feature of the risk, or both, if: (a) we receive both Part 1 and Part 2 of the application; and (b) we could have issued such a policy on the effective date under our underwriting standards. The required amendments must be signed and any extra premium paid immediately upon notice; otherwise, there will be no insurance, and we will refund the amount paid. If the proposed insured dies before receipt of such notice, the amendments will be considered signed, and we will deduct any unpaid extra premium from the proceeds.
"3. No Insurance if Above Conditions Not Met
 "If we could not have issued a policy under the above Section 2, there will be no insurance, and we will refund the amount paid."
On June 10, six weeks after completing the life insurance application and receiving the prepayment receipt, but prior to receiving a policy from the defendants, Burchfield died.
Prior to Burchfield's death, his application for life insurance was received by Edward Hohensee, an underwriter for the defendants. After reviewing the application and other reports regarding Burchfield, Hohensee made the decision to decline the application on behalf of MBL on June 6, 1983. Hohensee stated that his decision was based on his assessment of Burchfield's mortality risk as being beyond the underwriting standards for the insurance policy for which Burchfield had applied (i.e., beyond a 300% mortality risk factor, or an "H" rating). According to the underwriting cover sheet, Hohensee's decision to decline the application was endorsed on June 6, 1983, by Fred W. Dathe, an underwriting officer, and Henry Heise, the senior underwriting officer.
Hohensee further testified that after declining the application, but before receiving notice of Burchfield's death, he sent Burchfield's file to five reinsurance companies for "experimental underwriting." Hohensee indicated that the purpose of sending the file to these reinsurers was to determine if MBL might have somehow misjudged the file, as well as to allow the applicant a full opportunity for coverage if some form of insurance might have been *Page 695 
available. A copy of the file was forwarded to each of the reinsurers on June 14. After receiving notice of Burchfield's death, MBL received responses from each of the reinsurers. Four of the reinsurers declined to make an offer for any portion of the proposed risk. The fifth reinsurer, North American Life and Casualty, offered to participate in issuing the policy, although it would do so only at a mortality risk factor of 350% (a "J" rating), which MBL deemed unacceptable.
The final notation on the underwriting coversheet in Burchfield's file, made by Peter Krukiel, the supervising underwriter, indicates that Krukiel received a call on June 14 from Elvin Downer, manager of the defendants' claims department, who reported that Burchfield had died on June 10. The notation further states: "Noting application prepaid we should 'complete' underwriting and forward policy, check to Elvin if insured or advise him if otherwise."
When Smith called Starnes to report Burchfield's death, Starnes told her that he was expecting a policy but had not yet received it. Starnes testified that on the same day that he learned of Burchfield's death, he received a note about a policy having been issued and that he would need to collect an additional premium. However, Smith testified that on July 10, she received a call from Starnes, who said that he had received a return of the $73.10 initial premium and that the defendants indicated that they could not issue a policy because of Burchfield's prior health problems. Smith refused the refund check and after an exchange of correspondence with the local agents and the defendants, she filed her action.
 I.
The first issue raised on this appeal is whether there was sufficient evidence to support the jury's finding of an insurance contract between Burchfield and the defendants. The defendants maintain that the evidence was insufficient for the jury to find that they had breached an insurance contract because, they argue, they could not, under their underwriting standards, have issued a life insurance policy to Burchfield at the time he applied.
Initially, we note that no ground for reversal is more carefully scrutinized or rigidly limited than one charging that a verdict is against the weight of the evidence. Kilcrease v.Harris, 288 Ala. 245, 259 So.2d 797 (1972). The strong presumption of correctness of a jury verdict is strengthened by the trial court's denial of a post-judgment motion for a new trial. Christiansen v. Hall, 567 So.2d 1338 (Ala. 1990). Therefore, we must review the tendencies of the evidence most favorably to the prevailing party and indulge all inferences that the jury was free to draw. Id. Moreover, a judgment based on a jury verdict will not be reversed unless the verdict is plainly and palpably wrong. Davis v. Ulin, 545 So.2d 14
(Ala. 1989). After reviewing the record in this case, we find ample evidence to support the jury's verdict on the breach of contract claim.
According to the terms of the prepayment receipt that Burchfield was given when the application was completed, Burchfield was entitled to have issued to him the policy that he applied for, or another policy based on the application as amended to provide for a different premium class or for the elimination or reduction of any portion or feature of the risk, if he met the underwriting standards for the policy that was to be issued. The defendants maintain that MBL could not have issued Burchfield the policy for which he applied because he did not meet the underwriting standards for that policy. They concede that Mutual Benefit Life does issue policies to individuals with mortality risk factors higher than that which they assigned to Burchfield. They did not, however, consider Burchfield for such a policy before declining his application. The defendants argue that MBL and Mutual Benefit Life are distinctly separate entities and that because Burchfield's application was made to MBL, a Mutual Benefit Life policy could not have been issued.
The record indicates that MBL is a wholly owned subsidiary of Mutual Benefit Life. The two companies share several directors, *Page 696 
and a majority of MBL's officers are also officers of Mutual Benefit Life. All of MBL's employees are paid by Mutual Benefit Life, and all of the underwriting for MBL is done by the underwriting department of Mutual Benefit Life. The home office of both companies has signs reading only "Mutual Benefit Life." The Birmingham general agent for both companies titled his agency "Mutual Benefit Life" and listed it in the telephone directory only under that name.
John Balmer, an underwriter for reinsurer North American Life and Casualty, testified that he received all of his information regarding Burchfield's application from Mutual Benefit Life and that he understood that he was dealing with Mutual Benefit Life, not MBL. Furthermore, a letter from Jack Lambdin, vice president of underwriting for Mutual Benefit Life, in which he denied that an insurance policy was in existence, was written on "Mutual Benefit Life" stationery and stated, "[W]e have determined that we could not have issued a life insurance policy." (Emphasis added.) Finally, although Burchfield made his check for the initial premium payable to "Mutual Benefit Life," it was deposited into the account of "MBL Life Assurance Corporation."
The record also reveals that Edward Hohensee, an underwriter for the defendants, admitted that no additional information would have been required of Burchfield in order for a decision to have been reached as to whether Mutual Benefit Life could issue a life insurance policy to Burchfield. Furthermore, Hohensee could not give an example of a person in a situation similar to that of Burchfield being declined insurance.
In view of the evidence presented to the jury, we find no error in the trial court's entry of a judgment based on the jury's finding that MBL and Mutual Benefit Life breached a contractual duty to issue a life insurance policy to Burchfield.
 II.
The second issue raised is whether the trial court erred in entering a judgment notwithstanding the verdict on Smith's fraud claim. Smith argues that she presented sufficient evidence to prove that the defendants intentionally lied to her about Burchfield's insurability.
In its order entering the judgment notwithstanding the verdict, the trial court noted that this was not a case in which the alleged misrepresentation occurred at the time of or before the application for the policy, thereby inducing the applicant to file the application for insurance; rather, this was a case in which the alleged misrepresentation occurred after the death of the applicant and it involved statements to the purported beneficiary as to whether there was insurance coverage.
A judgment notwithstanding the verdict is proper only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ and the moving party is entitled to a judgment as a matter of law. Alpine Bay Resorts, Inc. v.Wyatt, 539 So.2d 160 (Ala. 1988). Whether the trial court erred in ruling on a motion for a judgment notwithstanding the verdict is tested by the purely objective standard of whether the party having the burden of proof has produced evidence requiring resolution by a jury. Ex parte Oliver, 532 So.2d 627
(Ala. 1988). On review of a judgment notwithstanding the verdict, the evidence must be reviewed in the light most favorable to the nonmoving party. Twilley v. Daubert CoatedProducts, Inc., 536 So.2d 1364 (Ala. 1988).
Initially, we note that the elements of actionable fraud based on a misrepresentation are: (1) a duty to speak the truth; (2) a false representation of a material existing fact made intentionally, recklessly, or innocently; (3) action by the plaintiff in reliance upon the false representation; and (4) damage proximately resulting from the false representation.Salter v. Alfa Ins. Co., 561 So.2d 1050 (Ala. 1990). Assuming, without deciding, that Smith presented sufficient evidence of a duty by the defendants to speak the truth, *Page 697 
sufficient evidence of a false representation of a material fact, and sufficient evidence of damage resulting from the false representation, we find that she failed to present any evidence indicating that she acted in reliance upon the false representation.
The record clearly indicates that Smith neither believed nor relied upon the information communicated by the defendants when they represented to her that there was no insurance coverage on Burchfield's life. For example, in a letter to the defendants, Smith stated:
 "I believe Robert D. Burchfield . . . was insurable and I also believe MBL Life Assurance Corporation would have issued Robert Burchfield an insurance policy if he had not died."
Instead of relying on the defendants' representation, Smith retained an attorney and sued to claim the existence and subsequent breach of an alleged contract.
In Jones v. Alabama Farm Bureau Mut. Cas. Ins. Co.,507 So.2d 396 (Ala. 1986), this Court considered and rejected a fraud claim similar to that made by Smith. Jones involved a dispute between a policyholder and an insurer over whether certain property damage was covered under a homeowner's policy. After a demand by the policyholder for the policy proceeds, the insurer denied coverage and was sued by the policyholder on, interalia, contract and fraud theories. The alleged fraud consisted of a representation made by the adjuster, after the loss, as to whether there was coverage. Noting that a fraud action requires proof of reliance and damage, as well as proof of a misrepresentation of a material fact, this Court affirmed a summary judgment in favor of the insurance company on the fraud claim:
 "That portion of [the plaintiff's] fraud claim that is bottomed on [the adjuster's] alleged misrepresentation . . . was properly stricken because there could have been no reliance . . . on this representation. It is evident that [the plaintiff] was not deceived and was not induced to act or fail to act in reliance upon the alleged misrepresentation."
507 So.2d at 401.
Here, viewing the record in the light most favorable to Smith, as we are compelled to do, we find that she failed to present any evidence that she relied upon the defendants' statements that Burchfield was not insured. Therefore, we hold that the trial court correctly entered a judgment for the defendants on Smith's fraud claim, notwithstanding the jury's verdict in favor of Smith.
 III.
The third issue is whether the trial court erred in directing a verdict in favor of the defendants on Smith's bad faith claim. Smith argues that she made a prima facie showing that the defendants acted in bad faith in refusing to pay to her, as beneficiary, the proceeds of Burchfield's life insurance policy. Smith urges this Court to reverse the trial court's judgment on her bad faith cause of action. Curiously, Smith also insists that, because of the alleged presence of bad faith, the jury's award of punitive damages on her fraud claim may be upheld without the necessity of a new trial, in spite of the trial court's entry of a judgment notwithstanding the verdict on that claim.
In National Sec. Fire Cas. Co. v. Bowen, 417 So.2d 179
(Ala. 1982), this Court set out the elements of the tort of bad faith:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine *Page 698 
whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith
nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim."
Id. at 183. (Emphasis in original.)
In a typical case, the plaintiff, in order to make out a prima facie case of bad faith refusal to pay an insurance claim, must offer proof to show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, is entitled to recover on the contract claim as a matter of law.National Sav. Life Ins. Co. v. Dutton, 419 So.2d 1357
(Ala. 1982). Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the contract claim, the bad faith claim must fail and should not be submitted to the jury. Id. If any one of the reasons for the denial of coverage is at least "arguable," this Court has stated that it need not "look any further, and a claim for bad faith refusal to pay the claim will not lie." Alfa Mutual Ins.Co. v. Smith, 540 So.2d 691, 695 (Ala. 1988), quoting McLaughlinv. Alabama Farm Bureau Mut. Cas. Ins. Co., 437 So.2d 86, 91
(Ala. 1983).
However, as this Court has previously recognized, there are exceptions to the "directed verdict on the contract claim standard." See Safeco Ins. Co. v. Sims, 435 So.2d 1219
(Ala. 1983). In our recent opinion in Ex parte Blue Cross BlueShield of Alabama, 590 So.2d 270 (Ala. 1991), Justice Houston carefully analyzed each of this Court's prior cases wherein extraordinary circumstances were held to exist so as to circumvent the applicability of the "directed verdict on the contract claim standard." However, after carefully considering those holdings, we find each to be based on facts distinguishable from the facts presented in this case.
For example, in Thomas v. Principal Financial Group,566 So.2d 735 (Ala. 1990), which was discussed in Blue Cross and which was cited by Smith as being "just like" the present case, this Court noted that there was evidence that the defendant failed to examine medical records; that evidence allowed the inference that there had been an intentional failure to determine whether there was a lawful basis for denying the claim. Here, however, the underwriters at MBL made a detailed review of the application, medical records, and file and then duly declined the application as presenting a risk beyond its underwriting standards. The dispute in the present case centers on whether, under the language contained in the prepayment receipt, the defendants were under a duty to consider Burchfield for any policies that could be issued by Mutual Benefit Life. Therefore, in this case, as in a typical case, Smith, in order to be entitled to have her bad faith claim presented to the jury, must first have been able to prove that she was entitled to a directed verdict on her contract claim. This she could not do.
Here, the defendants presented an arguable and legitimate reason for denying Smith's claim as beneficiary of an insurance policy on Burchfield's life. The record clearly reveals a genuine issue of material fact regarding whether an insurance contract existed between Burchfield and the defendants.
As noted above, Burchfield applied to MBL for a life insurance policy. In return he was given a prepayment receipt specifying his contractual right to the policy that he applied for or, if he did not qualify for that policy, his right to any policy for which he did qualify.
After reviewing Burchfield's application and medical records, underwriters for MBL reached the conclusion that Burchfield did not qualify for any policy marketed by MBL and made the decision to decline the application. However, the defendants made the decision to decline the application without considering whether Burchfield met the underwriting standards for any of the policies marketed by MBL's parent company, Mutual Benefit Life. The defendants maintained that they could not have *Page 699 
issued a Mutual Benefit Life policy to Burchfield because, they argue, MBL and Mutual Benefit Life are separate and distinct entities and Burchfield made application only to MBL. The positions taken by Smith and the defendants created a question of fact regarding the interpretation of the terms of the prepayment receipt, thus precluding a directed verdict for Smith on her breach of contract claim. Because Smith was not entitled to a directed verdict on her breach of contract claim, and because she did not fit into the narrow exceptions prescribed in Blue Cross or Thomas, the trial court properly determined that Smith, as a matter of law, was not entitled to recover on her bad faith claim. Therefore, we hold that the trial court correctly directed a verdict for the defendants with regard to Smith's claim of bad faith.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS, HOUSTON and STEAGALL, JJ., concur.