J. Ed Adams, d/b/a I-10 Truck Center, Inc., and his wife Shirley Adams appeal from a partial summary judgment entered in favor of Auto-Owners Insurance Company.
A summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), A.R.Civ.P.
To overcome a properly supported motion for summary judgment, the nonmoving party must present substantial evidence supporting its claims and creating a genuine issue of material fact. § 12-21-12, Ala. Code 1975. To satisfy the "substantial evidence test," the nonmoving party is required to present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance, Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
The evidence, viewed in a light most favorable to the nonmoving party, as we are required to view it, suggests the following: J. Ed Adams, Jr., owns and does business through, a corporation known as I-10 Truck Center, Inc. Through that corporation, he operates a truck center in Mobile. Adams purchased a commercial property insurance policy from Auto-Owners Insurance Company, to provide coverage for property damage sustained to the truck center building. *Page 971 
Adams purchased the policy through an independent insurance agent, Robert Schneider.
On June 9, 1989, Adams contacted Schneider, claiming that the truck center building had suffered damage from a storm that had occurred the previous day. There is no dispute that a thunderstorm did occur on that day. Schneider viewed the building and notified Auto-Owners that Adams was making a claim based on damage to the roof of the building. Auto-Owners contacted Olander Construction Company for an estimate on the cost of repairing the roof. Howell Kent McAnnally, an employee of Olander, completed a report, estimating that the damage to the roof was "$46,389.88 due to wind damage." However in his deposition, McAnnally stated that he thought the roof was "worn out" and had not suffered wind damage.
Adams began having increasing problems with rainwater leaking into the building. Schneider told Adams that, according to his contract, he had to make emergency repairs in order to prevent further damage while the claim was being processed.
Auto-Owners hired an independent adjusting service, GAB, to investigate and to examine the building. Wade Reeves, an adjuster for GAB, conducted an on-site inspection of the building and its roof. Reeves determined that the roof had not been significantly damaged by wind, but instead had deteriorated with age.
Auto-Owners then instructed GAB to hire an independent engineer to inspect the roof. GAB hired Owen Posey, and he conducted an on-site examination of the building. He determined that the building had suffered $2,509.92 in damage due to the storm, but that the remainder of the problem with the roof was due to age. Posey stated in his report that there were several patches on the roof and that those patches indicated the general condition of the roof. Also, Posey stated that a crack in the ceiling nearly 25 feet long was much more than a few months old and that that crack had contributed to the leaking. Auto-Owners agreed to pay for the $2,509.92 in damage Posey said had been caused by the wind.
Subsequently, Adams hired a certified roof consultant, William Kivette, who said he found that the problem with the roof had been caused by wind and not by age. Kivette stated that the 25-foot crack in the ceiling was exactly the type of damage that is caused by wind.
Because of severe leakage in the roof, Adams has suffered a loss in his business. Adams says that he is financially unable to repair the roof and that because of the lack of repairs the building has suffered more damage.
Adams sued Auto-Owners, alleging breach of contract, bad faith, and fraud. The trial court entered a summary judgment for Auto-Owners on the bad faith and fraud claims and made that summary judgment final pursuant to Rule 54(b), Ala.R.Civ.P. The breach of contract claim is still pending.
The first issue is whether Adams presented substantial evidence of bad faith. A plaintiff alleging bad faith must show (1) that there was "an insurance contract between the parties"; (2) "an intentional refusal to pay the insured's claims"; (3) "the absence of any reasonably legitimate or arguable reason for that refusal"; (4) "the insurer's actual knowledge of the absence of any legitimate or arguable reason"; and (5) "if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." Smith v. MBLLife Assurance Corp., 589 So.2d 691, 697 (Ala. 1991), (quotingNational Sec. Fire Cas. Co. v. Bowen, 417 So.2d 179, 183
(Ala. 1982)).
Adams must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. National Sec. Fire Cas. Co. v. Bowen. If any one of the insurer's reasons for denying benefits is at least arguable, this Court need look no further; a claim for bad faith will not lie. Smith, 589 So.2d at 698.
Auto-Owners denied payment on the basis of two on-site investigations conducted independently by an adjuster and an engineer. *Page 972 
Certainly, these two investigations provide reasonably arguable and legitimate reasons for denying Adams's claim. We note that Adams has not questioned the credibility of either the adjuster or the engineer and has not contended that either of them "manufactured" evidence to defeat Adams's claim. Cf. UnitedServices Automobile Ass'n v. Wade, 544 So.2d 906 (Ala. 1989).
The next issue is whether Adams, in opposition to the defendant's properly supported summary judgment motion, presented substantial evidence of fraud. Adams claims that he relied on the estimate made by McAnnally for Olander Construction in that he thought the windstorm had caused over $46,000 in damage to his roof. Absolutely nothing in the record indicates that that figure was anything more than an estimate of how much it would cost to repair the roof. Nothing indicates that anyone from Auto-Owners told Adams that this estimate was a determination of storm damage or even that it was based on an investigation of his claim. Adams failed to show even that it was reasonable for him to assume that the $46,000 figure was based on a final determination of his claim.
Last, Adams asks this Court to determine whether certain extracontractual damages should be allowed under the breach of contract claim, which is still pending before the trial court. Although that issue is before this Court on an appeal by permission from an interlocutory order, See Rule 5, Ala.R.App.P. The trial court based the interlocutory order on its "order granting the defendant's motion to strike [the claim for] general damages" based on breach of contract.
Rule 12(f), A.R.Civ.P., provides that the court may "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Adams failed to include the pleadings in the record on appeal. Because the court struck a portion of the pleadings concerning damages and those pleadings are not before this Court, there is nothing for us to review on the issue of extracontractual damages.
Based on the foregoing, we affirm.
AFFIRMED.
ALMON, HOUSTON, INGRAM and COOK, JJ., concur.
MADDOX, J., concurs in the result.