These appeals concern a dispute over the insurance coverage on an office building that burned in Huntsville, Alabama, in 1990. S W Properties, Inc. (hereinafter "S W"), the insured, appeals from a summary judgment entered in favor of the insurer, American Motorists Insurance Company (hereinafter "American Motorists"), on S W's claims of bad faith and fraud. American Motorists cross-appeals from the judgment entered on a jury verdict in favor of S W on S W's breach of contract claim. We affirm as to both appeals.
S W is a "subchapter S" corporation formed in 1989, by Jim Smith and Randy Wrigley, to purchase and develop real estate. The company purchased a parcel of 8.5 acres of land and two office buildings in Huntsville, at 7702 Governors Drive, for a total of $435,000, executing a first mortgage in favor of the original owner and a second mortgage in favor of First Alabama Bank. S W insured the buildings and property through Blair Insurance, Inc., of Birmingham, under a policy issued by American Motorists, a *Page 531 
division of Kemper National Insurance Companies. The policy provided for $350,000 in coverage (with an automatic 8% increase annually). The mortgagees were the loss payees under the policy. At the time of the purchase, the larger building on the property was vacant; S W intended to lease the office space in that building to commercial tenants after it had been renovated and cleaned. This larger building was destroyed by fire on the night of October 14, 1990.
On January 23, 1991, S W sued American Motorists, alleging breach of contract and a bad faith refusal to pay a first-party insurance claim; American Motorists denied S W's claims, pleading the affirmative defenses of arson, concealment, and exclusion, based upon its characterization of the loss as vandalism occurring while the premises were vacant. S W later amended its pleading in August 1991 to allege fraud in the sale of the policy and concealment in the handling of the claim.
American Motorists ultimately paid the claim to the mortgagees in April 1991; under the terms of the insurance contract, American Motorists was obligated to pay the mortgagees even if it denied the claim of the named insured. The face value of the coverage satisfied the first mortgage and part of the second; American Motorists later discovered that it had neglected to include in the payment the automatic 8% increase of coverage as stipulated by the insurance contract. When this error was discovered, the company paid the increase, along with all interest and attorney fees, to the second mortgagee in February 1992; this payment satisfied the second mortgage.
Before trial, American Motorists filed a motion for a partial summary judgment as to the claims of bad faith and fraud, asserting arson by one of S W's partners, Randy Wrigley, as a defense. This motion was granted by the trial court on April 8, 1993. Trial on the contract claims commenced on January 21, 1994, and a jury ultimately awarded the plaintiffs $69,499.47, after allowing credit for the payments made by American Motorists to the mortgagees. In addition, American Motorists was ordered to release the mortgages on the S W property; it had taken assignments of the mortgages after paying the claim. Both parties appealed.
The elements of a bad faith case were set out by this Court in National Sec. Fire Cas. Co. v. Bowen, 417 So.2d 179
(Ala. 1982):
 "[T]he plaintiff in a 'bad faith refusal' case has the burden of proving:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if . . . intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith
nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim."
417 So.2d at 183. See also Chavers v. National Sec. Fire Cas.Co., 405 So.2d 1 (Ala. 1981).
In National Savings Life Insurance Co. v. Dutton,419 So.2d 1357, 1362 (Ala. 1982), this Court also stated the following:
 "In Bowen, supra, we set out the elements of the tort and attempted to show the plaintiff's burden in these cases. It is a heavy burden. In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a *Page 532 
fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury."
On appeal, S W contends that the summary judgment on its bad faith and fraud claims was unsupported by the record and was contrary to current Alabama law. It also asserts that the "directed verdict" standard is not the sole test for bad faith. While conceding that the evidence here in the bad faith claim "demonstrates a material dispute," S W contends that either the claim should be governed by an "intentional failure to investigate" standard, or that this is an "exceptional" case involving circumstances suggesting dishonesty by American Motorists. After a careful study of the submitted materials, and applying the principles of law applicable to bad faith and fraud claims, we disagree with S W's contentions. The law provides that "the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim." National Sec. Fire Cas. Co. v. Bowen, 417 So.2d at 183; National Savings Life Insurance Co. v. Dutton,419 So.2d 1357, at 1361; see also Adams v. Auto-Owners Ins. Co.,655 So.2d 969 (Ala. 1995).
In order to establish the affirmative defense of arson to a loss claim on a policy of insurance, the insurer has the burden of proof, and it must present evidence of 1) arson by someone, 2) motive on the part of the insured, and 3) evidence implicating the insured. Bush v. Alabama Farm Bureau Mut. Cas.Ins. Co., 576 So.2d 175 (Ala. 1991), citing Great Southwest FireIns. Co. v. Stone, 402 So.2d 899, 900 (Ala. 1981).
In support of its motion for summary judgment on the bad faith claim, American Motorists presented the following evidence to the trial court:
As evidence of arson by someone, American Motorists presented the findings of Don Dowling, a fire investigator, who spent three days investigating the site of the fire. Dowling's investigation led him to believe, based upon the pattern of the burning in the building, that the fire had started in the building's front hallway. (Another investigator, from the Arson Task Force for the City of Huntsville, reached the same conclusion.) The day before the fire, two workers had been assigned to clean up renovation debris and trash in the building, which included the contents of a janitorial closet that had been maintained by the previous tenants. The men were told to stack the refuse in the front hallway, to be carried away at a later date, because the truck regularly used to haul the trash away was in the shop being repaired. Dowling investigated the debris area for evidence of something that could have caused the fire naturally and was unable to find anything; that fact led him to conclude that the fire had been intentionally set.
Additionally, on the day before the fire, the occupants of the building had smelled an odor they described as being like "rubber burning" or "plastic melting." Wrigley described it as smelling like the "melted tar of an overheated fluorescent light ballast." Although workers were sent up into the attic to investigate, and although the smell was determined to be strongest in the area where the former tenants had had a kitchen, no one was able to find the origin or cause of the smell. With this information, Dowling supervised the removal of all the light fixtures in the front hallway and had them analyzed to determine whether they could have caused the fire; he found no evidence that they could have. Additionally, Dowling found evidence of the presence of gasoline or petroleum distillate in the hallway. Based upon all of this evidence, Dowling concluded that the fire had been deliberately set.
In opposition, S W presented evidence that Dowling's investigation of light fixtures as a fire source was limited to the fixtures in the front hallway and that he had not examined the light fixtures in the kitchen area where the smell had come from the day before. S W also presented evidence that the building had had a previous fire of electrical origin. Last, as to the question of the presence of gasoline in the hallway, S W presented the testimony of one of the workers assigned to clean the building; he stated that he had removed over 20 bottles and jars of paint and other unknown liquids from the janitor's closet and had placed them in the *Page 533 
hallway to be removed. Photographs of the fire scene also showed the remains of a gasoline-powered "pressure washer" in the debris. S W also presented evidence disputing the positive test results in the debris samples taken by Dowling.
As for motive on the part of the insured, American Motorists presented evidence that the owners of S W Properties had each paid out $15,000 to $20,000 on the mortgages and that at the time of the fire the business was losing money. At the time of the fire, none of the office space in the building was occupied, although Wrigley was in the process of moving his construction business there and had signed a lease for the space. American Motorists contended that while the lease had been signed, no payments had yet been made to the partnership and that the other space was unrented, although another company had indicated interest. S W countered these assertions with evidence that it was current on all payments and in fact had reduced the principal significantly. Additionally, the owners presented evidence that the building was underinsured at the time of the fire and contended that the insurance adjuster had failed to conduct an investigation into their finances, although both men had offered to arrange a meeting with their bankers. S W also contended that while the larger building was vacant, the smaller building had a commercial tenant and was producing income, and that Wrigley's construction company was getting ready to begin paying rent for a portion of the larger building. Additionally, the owners contended that the operating loss of S W, a subchapter-S corporation, was not unduly burdensome, because, they said, it allowed them a tax deduction.
As for evidence implicating the insured, American Motorists presented evidence that there was no sign of forced entry into the building at the time of the fire, and that Wrigley, who possessed a key to the building, was only a few miles away at the time of the fire. Wrigley had also apparently been to the building on the morning of the fire to pick up some signs. Wrigley and S W presented evidence that at the time of the fire Wrigley was inspecting another property in the presence of one of his employees, and that the locks on the building had never been changed from the time of its previous owners and tenants, some of whom had not turned in their keys.
All of the evidence set out above, as well as other evidence not detailed here, suggests a dispute over genuine issues of material fact. Therefore, the plaintiffs did not show that American Motorists had no legal or factual defense to the insurance claim. National Savings Life Insurance Co. v. Dutton, supra.
Based on the evidence set out above, we conclude that the trial judge properly held that the plaintiff had not met its burden. Therefore, the judge properly entered the summary judgment for the insurer. See Independent Fire Co. v. Lunsford,621 So.2d 977 (Ala. 1993); Turner v. State Farm Fire CasualtyCompanies, 614 So.2d 1029 (Ala. 1993).
We also hold that the summary judgment was proper on the fraud claim; we agree with American Motorists that S W failed to prove the first element of a fraud claim: a misrepresentation. While S W alleges that American Motorists fraudulently misrepresented that the insurance coverage would provide an 8% annual increase, we note that the policy did, in fact, provide for such an increase; thus, there was no misrepresentation. Additionally, we do not view the company's initial failure to pay the 8% increase as indicating fraud; we note that as soon as the company learned of its error, during a deposition, it immediately contacted the second mortgagee and arranged for full payment of the outstanding balance, including interest calculated from the date of the first payment and attorney fees.
We now turn our attention to the cross-appeal of American Motorists, in which it questions the propriety of the jury's verdict in favor of S W on its breach of contract claim. American Motorists contends that the jury's determination that it had breached its contract was plainly and palpably wrong. S W contends, on the other hand, that the evidence before the jury supported the verdict and that the judgment based on that verdict should be affirmed. *Page 534 
A strong presumption of correctness attaches to a jury verdict in Alabama, if the verdict passes the "sufficiency test" presented by motions for a directed verdict and a JNOV.Christiansen v. Hall, 567 So.2d 1338, 1341 (Ala. 1990); AlpineBay Resorts, Inc. v. Wyatt, 539 So.2d 160 (Ala. 1988). This presumption of correctness is further strengthened by a trial court's denial of a motion for a new trial. Christiansen, 567 So.2d at 1341. Denying, and to a more limited extent, granting, a motion for a new trial is within the sound discretion of the trial court. See, Jawad v. Granade, 497 So.2d 471, 477
(Ala. 1986). This Court will not, on a sufficiency of the evidence basis, reverse a judgment based on a jury verdict unless the evidence, when viewed in a light most favorable to the nonmovant, shows that the verdict was "plainly and palpably wrong and unjust." Christiansen, 567 So.2d at 1341.
At trial, both parties presented substantial evidence, as discussed earlier, in support of their contentions on the issue of whether the insurer breached the insurance contract. After reviewing the record, we cannot say that the jury verdict was plainly and palpably wrong, or unjust. In addition, we agree with S W that American Motorists failed to preserve this issue for review by failing either to move for a directed verdict at the close of all evidence, or to file any post-trial motions, such as a motion for a new trial or a JNOV. SeeVaughan v. Wann, 502 So.2d 760 (Ala. 1987).
We conclude that the judgment of the trial court is due to be affirmed, both as to the appeal and as to the cross-appeal.
1931227 — AFFIRMED.
SHORES, HOUSTON, KENNEDY, INGRAM, and COOK, JJ., concur.
ALMON, J., concurs in the result.
BUTTS, J., dissents.
1931303 — AFFIRMED.
SHORES, HOUSTON, INGRAM, COOK, and BUTTS, JJ., concur.