On Application for Rehearing
This court's opinion of June 14, 1996, is withdrawn and the following opinion is substituted therefor.
This case arises out of a refusal to pay benefits under a credit life insurance policy.
On July 9, 1991, Truman McLeod and his wife obtained a loan from First Federal Savings and Loan Association of Sylacauga. In connection with the loan, the McLeods purchased credit life insurance issued by Life of the South Insurance Company.
Before obtaining the insurance, Mr. and Mrs. McLeod filled out an application for insurance, certifying that they were in good health and that they had not been treated for cancer within the past two years. Mrs. McLeod, however, had been treated for breast cancer within two years preceding the loan. She informed the First Federal loan officer of that fact at the time she filled out the application for insurance. First Federal forwarded the McLeods' application for insurance to Life of the South. Life of the South accepted the application and sent the McLeods a certificate of insurance, but not a copy of the policy. On October 26, 1991, after the policy had been in force for more than 90 days, Mrs. McLeod died of breast cancer. Mr. McLeod filed a claim for credit life insurance benefits with Life of the South.
On March 31, 1992, Life of the South denied the claim, on the basis that Mrs. McLeod had materially misrepresented the state of her health on the application for insurance. Mr. McLeod received the following letter from Life of the South, dated March 31, 1992: *Page 364 
 "It is our firm commitment that all claims are handled fairly and in accordance with the terms of the policy . . . . We have carefully reviewed this claim and we must report that no benefits can be approved for this claim for the reason indicated below:
 "When this loan was made on 7/9/91, Ms. McLeod signed an eligibility statement verifying that she was in good health and had not consulted or been treated by a physician [for] cancer in the past two years. Medical records show she had been under treatment since 6/90 for cancer. Had we been advised of this history at the time of issue, this coverage would not have been issued. Therefore, we are rescinding coverage and refunding the premium in full to the First Federal Savings Loan."
After he received the denial letter from Life of the South, McLeod apparently took no further action on his claim for two years and nine months. Then, in January 1995, McLeod learned that the credit life policy contained the following incontestability clause:
 "This policy shall be incontestable after ninety days from its effective date, except for nonpayment of premiums . . . . No statement made by any Debtor insured under this policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of ninety days."
On January 24, 1995, McLeod filed an action against Life of the South and First Federal, claiming breach of contract and bad faith refusal to pay, as to Life of the South, and fraudulent suppression of the existence of the incontestability clause, as to both First Federal and Life of the South.
Life of the South conceded its liability under the breach of contract claim and paid the proceeds of the insurance policy into court. The trial court held that the bad faith and fraudulent suppression claims were barred by the statute of limitations, and it entered a summary, judgment for the defendants on those claims, and made that summary judgment final, pursuant to Rule 54(b), Ala.R.Civ.P. The trial court specifically found that Life of the South's March 31, 1992, denial letter "provided [McLeod] with actual knowledge of facts which placed him on notice of the alleged fraud and/or bad faith." McLeod appealed to the Alabama Supreme Court, and the cause is before us pursuant to Ala. Code 1975, § 12-2-7(6). "The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law." Howard v. Mutual Savings Life Insurance Co.,608 So.2d 379, 381 (Ala. 1992). We must review the record in the light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Id. The nonmovant must meet his burden by presenting "substantial evidence." Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989); Ala. Code 1975, § 12-21-12. "Under the substantial evidence test, the nonmovant must present 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' " Howard, 608 So.2d at 381 (quotingWest v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989)).
 Bad Faith
The statutory limitations period for bad faith claims arising on or after January 9, 1985, is two years. ALFA Mut. Ins. Co.v. Smith, 540 So.2d 691, 692-93 (Ala. 1988). Our supreme court has held that "the bad faith refusal to pay a claim is merely a species of fraud and, as such, the statutes of limitation applicable to fraud apply." Dumas v. Southern Guar. Ins. Co.,408 So.2d 86, 89 (Ala. 1981).
 "[T]he running of the statute of limitations [for fraud] may be triggered when the party seeking to bring the action knew of facts which would put a reasonable mind on notice of the possible existence
of fraud. This is also the standard by which to determine when a cause of action for bad faith refusal to pay insurance benefits accrued for the purposes of commencing the running of the statute of limitations." *Page 365 
Farmers Merchants Bank v. Home Ins. Co., 514 So.2d 825,831-32 (Ala. 1987) (emphasis in original). " '[A] cause of action for bad faith refusal to honor insurance benefits accrues upon the event of the bad faith refusal, or upon the knowledge of the facts which would reasonably lead the insured to a discovery of the bad faith refusal.' " Blackburn v. Fidelity Deposit Co. of Maryland, 667 So.2d 661, 668 (Ala. 1995) (quotingSafeco Ins. Co. of America v. Sims, 435 So.2d 1219, 1222
(Ala. 1983)).
The issue before us is whether the denial letter of March 31, 1992, provided McLeod with knowledge of facts that would reasonably lead him to discover what he alleges to have been a bad faith refusal to pay his claim, and to discover what he claims to have been a fraudulent suppression of the existence of the incontestability clause. If the letter did give him that knowledge, then his bad faith and fraudulent suppression claims are barred because they were not brought within two years of March 31, 1992.
McLeod claims that Life of the South was guilty of bad faith when, knowing that the policy was incontestable, it denied his claim on the very ground that the policy provided was incontestable, namely Mrs. McLeod's misrepresentation of her health history on the application. McLeod argues, however, that the statutory period of limitations did not begin to run when Life of the South denied his claim on March 31, 1992. On that date, he says, he did not know of the existence of the incontestability clause and was, therefore, unaware of "the facts which would reasonably lead [him] to a discovery of the bad faith refusal." Instead, he contends, the limitations period began to run in January 1995, when he learned that the policy contained an incontestability provision. Life of the South, on the other hand, argues that the March 31, 1992, denial letter put McLeod on notice of facts that a reasonable person would have investigated and that would, in the normal course of events, have led to a discovery of any bad faith and fraudulent suppression.
"Bad faith is the intentional failure by an insurer to perform the duty of good faith and fair dealing implied in law.Koch v. State Farm Fire Casualty Co., 565 So.2d 226, 229
(Ala. 1990)." Turner v. State Farm Fire Casualty Co.,614 So.2d 1029, 1032 (Ala. 1993). Our supreme court has outlined the elements of a bad faith cause of action as follows:
 "A plaintiff alleging bad faith must show (1) that there was 'an insurance contract between the parties'; (2) 'an intentional refusal to pay the insured's claims'; (3) 'the absence of any reasonably legitimate or arguable reason for that refusal'; (4) 'the insurer's actual knowledge of the absence of any legitimate or arguable reason'; and (4) 'if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.' Smith v. MBL Life Assurance Corp., 589 So.2d 691, 697 (Ala. 1991) (quoting National Sec. Fire Cas. Co. v. Bowen, 417 So.2d 179, 183 (Ala. 1982))."
Adams v. Auto-Owners Ins. Co., 655 So.2d 969, 971 (Ala. 1995). "To prove a bad faith claim, a plaintiff must go beyond merely showing nonpayment; i.e., it is incumbent on the plaintiff to show that the insurance company had no legal or factual defense to the claim." Emanuelsen v. State Farm Auto. Ins. Co.,651 So.2d 29, 31 (Ala.Civ.App. 1994). Furthermore, a plaintiff must show that the insurer had actual knowledge that it had no legitimate or arguable reason to deny the claim. Harrington v.Guaranty Nat'l Ins. Co., 628 So.2d 323 (Ala. 1993); Thomas v.Principal Financial Group, 566 So.2d 735 (Ala. 1990).
 " '[A]ctual knowledge' . . . implies conscious doing of wrong. Bad faith, then, is not simply bad judgment or negligence. It imports a dishonest purpose and means a breach of known duty, i.e., good faith and fair dealing, through some motive of self-interest or ill will."
Thomas v. Principal Financial Group, 566 So.2d at 741 (quotingGulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916, 924
(Ala. 1981)).
If Life of the South was, on March 31, 1992, guilty of a bad faith refusal to pay the McLeod claim, then the bad faith was due to the fact that the policy was, on that date, incontestable. The "principal function [of an *Page 366 
incontestability clause] is to cut off defenses such as . . . misrepresentation that go to the existence of the policy after the policy has been in force and effect for a period of time."National Life Accident Ins. Co. v. Mixon, 291 Ala. 467, 473,282 So.2d 308, 313 (1973).
When Mrs. McLeod died, the policy had been in force for more than 90 days. At that time, the incontestability provision eliminated any defense relating to Mrs. McLeod's misrepresentation in the application for insurance that Life of the South might otherwise have had. Mixon, supra. Given the incontestability clause, we conclude that McLeod presented evidence satisfying all the requirements of a bad faith cause of action: evidence that the parties had an insurance contract; that the insurer intentionally refused to pay the insured's claim; that the insurer had no reasonably legitimate or arguable reason for the refusal; and that the insurer had actual knowledge of the absence of a legitimate or arguable reason for the denial. See National Sec. Fire Cas. Co. v.Bowen, 417 So.2d at 183.
Life of the South argues that McLeod's bad faith claim accrued when the insurance company denied coverage, not when McLeod discovered the existence of the incontestability clause. Citing Union Sec. Life Ins. Co. v. Crocker, 667 So.2d 688
(Ala. 1995), Life of the South claims that McLeod was put on notice of the insurance company's possible fraudulent conduct when the claim was denied. It further claims that, because bad faith is a species of fraud, McLeod's bad faith claim accrued at the same time his fraud claim accrued. We reject that argument for two reasons.
First, from the limited facts alleged in this case, we cannot say that McLeod was, as a matter of law, put on notice of the insurance company's possible fraud when the company denied his claim. McLeod admitted that he and his wife had signed statements attesting to their good health, but he alleged that they had informed the First Federal loan officer of Mrs. McLeod's cancer treatment when they filled out the application for insurance. However, McLeod did not allege or prove what, ifanything, the loan officer did or said upon being informed ofMrs. McLeod's cancer condition.
Without knowing what the loan officer did or said in response to the McLeods' revelation, it is impossible to determine whether McLeod had a fraud claim that accrued upon denial of the policy benefits. McLeod's allegations that Life of the South knew the true state of Mrs. McLeod's health and yet failed to pay the policy benefits do not, standing alone, state a claim of fraud.
 "The elements of a claim of fraudulent suppression of material fact are: (1) the suppression of a material fact (2) that the defendant was under a duty to communicate (3) because of a confidential relationship between the parties or the circumstances of the case and (4) which caused injury as a proximate consequence."
Applin v. Consumers Life Ins. Co., 623 So.2d 1094, 1098
(Ala. 1993). Rule 9(b), Ala. R. Civ. P., requires that a plaintiff state with particularity the circumstances constituting fraud. McLeod simply did not allege that the loan officer suppressed a material fact. Compare Miller v. DobbsMobile Bay, Inc., 661 So.2d 203, 205 (Ala. 1995), cert. denied sub nom. Ford Life Ins. Co. v. Miller, ___ U.S. ___,116 S.Ct. 177, 133 L.Ed.2d 117 (1995) (when insured informed agent of the poor state of his health, agent stated that insured's "health would not be a problem and that the insurance would be effective notwithstanding the state of his health"). For all that appears in the record, the loan officer may have told Mrs. McLeod that the policy benefits might not be paid. See UnionSecurity Life Ins. Co. v. Crocker, 667 So.2d at 692.
Second, even assuming that without regard to incontestability clause McLeod had a fraud claim, and further assuming that bad faith is, for statute of limitations purposes, a species of fraud, we note that the elements of fraud are very different from the elements of bad faith. To say that McLeod was put on notice of a fraud claim by the company's March 31, 1992, denial letter is not to say that McLeod was put on notice of a bad faith claim by that same letter. Because the elements of fraud and the elements of bad faith are different, information sufficient to provoke inquiry into the existence of the two claims is also different. *Page 367 
Under the limited facts alleged in this case, the denial of the claim could have amounted to no more than a breach of contract had there been no incontestability clause. Generally, an insurer has as a defense to its nonpayment of a claim the insured's material misrepresentation of his or her health history on the application for insurance. Hess v. Liberty Nat'lLife Ins. Co., 522 So.2d 270, 271 (Ala. 1988). Section 27-14-7, Ala. Code 1975, provides, in pertinent part:
 "(a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery unless either:
"(1) Fraudulent;
 "(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
 "(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."
The misrepresentation defense is not available, however, and § 27-14-7 does not apply, when there has been no concealment by the insured. Duren v. Northwestern Nat'l Life Ins. Co.,581 So.2d 810 (Ala. 1991); Coastal States Life Ins. Co. v. Leonard,279 Ala. 171, 182 So.2d 913 (1966).
 "[T]he general rule [is] that an intentional misrepresentation by the applicant of material facts relied on by the insurer permits the insurer to avoid the policy. The well recognized exception to this rule is: the policy is not avoided if the insurer knows the true facts, or the falsity of the statements, or has sufficient indications that would put a prudent person on notice so as to induce an inquiry which, if done with reasonable thoroughness, would reveal the truth."
Bankers Life Cas. Co. v. Long, 345 So.2d 1321, 1323
(Ala. 1977).
If the McLeods did not conceal Mrs. McLeod's health history, then Life of the South was not entitled to use the false statement in the application for the insurance as a defense to the claim. See Miller v. Dobbs Mobile Bay, Inc., 661 So.2d at 206 (citing with approval Southern United Life Ins. Co. v.Caves, 481 So.2d 764, 768 (Miss. 1985) (wherein the court held that an agent's knowledge of the applicant's preexisting heart condition was imputed to the insurer)).
 "In Miller . . . [the Alabama Supreme] Court held that an insurance company was bound by the actions of its agent, when the agent knew of the applicant's adverse health history and yet sold the policy without regard to that knowledge."
Huff v. United Ins. Co. of America, 674 So.2d 21, 23
(Ala. 1995).
If the policy had not been incontestable, or if Life of the South had had no actual knowledge of Mrs. McLeod's health history (as opposed to the knowledge of its agent imputed to it), then Life of the South's denial of the claim would have constituted not a bad faith refusal to pay, but a mere breach of contract. Based on what McLeod was told in the denial letter, we cannot say that, as a matter of law, he was put on notice of possible bad faith on the part of Life of the South.
In our judgment, reasonable minds could differ on whether McLeod had notice, from the letter denying his claim, that Life of the South may have intentionally, knowingly, and without arguable reason, refused to pay the benefits of the credit life policy. When he read the letter, McLeod knew that his claim was being denied because of an asserted misrepresentation about his wife's health in the application for insurance. McLeod also knew that he and his wife had told the First Federal loan officer, an agent for Life of the South, the truth about his wife's health. Those facts standing alone, however, do not necessarily indicate that McLeod knew when *Page 368 
he received the letter that Life of the South, in denying payment, was acting fraudulently or in bad faith. Whether a reasonable person would have investigated further, obtained a copy of the policy, and discovered the existence of the incontestability clause — the factor that made Life of the South's refusal to pay a bad faith refusal to pay — was, we think, a question for the jury.
 "The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases where the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud."
Hicks v. Globe Life Acc. Ins. Co., 584 So.2d 458, 463
(Ala. 1991) (emphasis in original). Here, the issue is not whether McLeod knew that the First Federal loan officer was told of Mrs. McLeod's condition; the issue is whether McLeod knew of the 90-day incontestability clause.
 Fraudulent Suppression
McLeod's complaint alleged that the insurance company and the bank fraudulently concealed from him the existence of the incontestability provision of the policy. Whether that claim was barred by the statute of limitations is, like the bad faith claim, a jury question. Hicks, supra. We express no opinion on the merits of the fraudulent suppression claim or upon the sufficiency of McLeod's complaint.
 Breach of Contract
Life of the South paid the proceeds of the policy, with interest, into court. The trial court denied the insurer's motion for a summary judgment on the contract claim. The parties do not dispute the correctness of that ruling.
The summary judgment related to the bad faith and fraudulent suppression claims is reversed and the cause is remanded for further proceedings.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION GRANTED; RULE 39(k) MOTION DENIED; REVERSED AND REMANDED.
YATES, J., concurs.
ROBERTSON, P.J., concurs in the result only.