I respectfully dissent. Congress Life breached its contract with Mrs. Barstow by delaying pre-authorization for nearly six months after Dr. Gunter requested it in his May 14, 1997 letter, by expressly denying pre-authorization in Congress Life's September 16, 1997 letter to Mrs. Barstow, and by not granting pre-authorization until November 3, 1997, amonth after the October 2, 1997 date when Mrs. Barstow filed her lawsuitagainst Congress Life. Congress Life breached its duty of good faith by not even conceiving the idea of a responsible investigation, the "dental review," of Mrs. Barstow's claim until a day after Mrs. Barstow had filed her lawsuit and by not transmitting the "dental review request" to American Dental Examiners until October 9, 1997, a week after Mrs. Barstow had filed her lawsuit. The completed "dental review" invalidated the September 16 denial by Congress Life and prompted Congress Life, then reacting to Mrs. Barstow's lawyer's October 2, 1997 demand, delivered by electronic facsimile, to "reconsider" the denial of pre-authorization.
Lori Luke, who, on behalf of Congress Life, handled Mrs. Barstow's claim, testified in her deposition that, when she received the October 2, 1997 demand letter from Mrs. Barstow's lawyer, she assumed from this letter that Mrs. Barstow had already filed suit. While Luke tried at trial to take back this deposition testimony (R. 487), Mrs. Barstow, as the verdict winner, is entitled to the benefit of the versions of the evidence and the inferences from the evidence most favorable to her claim. S W Props., Inc. v. American Motorists Ins. Co., 668 So.2d 529
(Ala. 1995); Day v. Alfa Mut. Ins. Co., 659 So.2d 32 (Ala. 1995); Brownv. Lawrence, 632 So.2d 462 (Ala. 1994); Christiansen v. Hall,567 So.2d 1338 (Ala. 1990).
Congress Life cannot validly maintain that the evidence favorable to Mrs. Barstow tends to prove only an anticipatory breach of contract. Congress Life itself, in its documentation, treated Dr. Gunter's request for pre-authorization as a "claim" and treated the September 16, 1997 denial of pre-authorization as a denial of the claim. That Congress Life itself treated the transaction as its denial of a claim, is substantial evidence of a completed breach as distinguished from a mere anticipatory breach.
Moreover, a single contract may, of course, contain several promises. The promisor's breach of any one of them is actionable if it proximately causes damage to the promisee, even though the promisor may not yet have breached its other promises in the contract. In the case before us, if Congress Life breached its pre-authorization promise in the contract and if that breach, in and of itself, proximately damaged Mrs. Barstow, then Congress Life is liable for the breach. That Congress Life delayed the treatment is part of the damage: the delay can hardly be parlayed into a defense that Congress Life had not yet had an opportunity to deny payment for treatment already received.
Congress Life cannot validly maintain that Dr. Gunter's pre-authorization request was premature for seeking pre-authorization more than thirty days before *Page 941 
an admission date. First, Congress Life cited no such ground in its September 16, 1997 letter denying pre-authorization. The law does not allow Congress Life to supplement its grounds for denial after the fact of the denial. Second, nothing in Dr. Gunter's letter suggests that he would delay surgery more than 30 days after pre-authorization if he received pre-authorization. On the contrary, Dr. Gunter's letter offers substantial evidence that he was ready, willing, and able to proceed with the treatment if and when Congress Life would pre-authorize it. The policy cannot reasonably be construed to mean that the insured must make an agreement with the hospital for an admission date before the insured can seek pre-authorization for the admission and the treatment. We cannot say as a matter of law that the long actual delay in performing the surgery after Congress Life eventually reconsidered its initial denial of pre-authorization and granted pre-authorization on November 3, 1997, was Dr. Gunter's plan when he sought pre-authorization, rather than simply the result of the uncertainties attendant to the pendency of the litigation throughout the entirety of the delay.
Therefore, Congress Life cannot validly maintain that, as a matter of law, Dr. Gunter's request for pre-authorization did not quicken the contractual duty of Congress Life to grant pre-authorization if the proposed treatment was covered and not excluded by the policy. Likewise, the quickening of the contractual duty to grant pre-authorization if the proposed treatment was covered and was not excluded, in turn, quickened the contractual duty, imposed on Congress Life by law, to exercise good faith in discharging the contractual duty for pre-authorization.
Actions favorable to Mrs. Barstow after the date Mrs. Barstow filed suit cannot eradicate causes of action accrued as of the date of suit. Mrs. Barstow filed suit on October 2, 1997. Congress Life did not begin its review or reconsideration of its denial of pre-authorization untilafter October 2, 1997. Specifically, Lori Luke of CBSA, which was assisting Congress Life in the administration of the claim, did not conceive the proposal to review the denial until October 3, 1997 (Defendants' Exhibit 28 and Plaintiff's Exhibit 21, Record 638-39); and Andrea L. Greiber of WPS Health Insurance (apparently affiliated with Congress Life) did not transmit the "dental review request" to American Dental Examiners, Inc., until October 9, 1997. (C. 642.) Congress Life did not follow the consequent advice from American Dental Examiners and did not accordingly reverse its denial and grant pre-authorization for Dr. Gunter's proposed treatment until November 3, 1997. (C. 397.) While Lori Luke may have begun to experience her own in-house doubts when she received the dental review report on October 16th,[6] she personally had no authority to "reverse" the denial of the claim. The record does not establish the dates when Luke began expressing her doubts to other in-house personnel. While Congress Life apparently made some in-house decision to reverse the denial at some time after October 16, the record does not support the conclusion that Congress Life effected any reversal of the denial until Lori Luke wrote Mrs. Barstow's attorney the November 3 letter over a month after suit had been filed and twelve days after Congress Life had been *Page 942 
served. Because causes of action against Congress Life for breach of contract and for bad faith failure to honor an insurance contract had already accrued before or by October 2, 1997, when Mrs. Barstow filed suit, the subsequent actions by Congress Life or on its behalf did not "unaccrue" Mrs. Barstow's causes of action.
Congress Life contends that the trial court erred to reversal in submitting Mrs. Barstow's two counts — the contract count and the bad faith count — to the jury, in entering judgment on the jury verdict, and in denying judgment as a matter of law. Thus an examination of these rulings on each of the two counts is appropriate.
The pertinent duty under the insurance contract was to grant pre-authorization if the treatment proposed by Dr. Gunter was covered and not excluded by the policy. The ground cited by Congress Life for denying pre-authorization in its September 16, 1996 letter was that Mrs. Barstow wrongfully misled Congress Life into insuring a risk that Congress Life would not have insured had it known the true facts. When Mrs. Barstow completed her application for the insurance policy on April 3, 1996, she omitted any reference to treatment or advice provided by the dentist Dr. Powell to or about Mrs. Barstow's daughter Megan, from Mrs. Barstow's answer to the question, "Have you or any of your dependents had medical or surgical advice, diagnostic testing or treatment in the past five years for any reason?" The record, however, contains substantial undisputed evidence supporting the conclusions that, when Mrs. Barstow completed the insurance application, Dr. Powell had not already told her Megan would need surgery; that, at that time, Mrs. Barstow did not know or understand that Megan would need surgery; that Mrs. Barstow reasonably could have concluded that "medical" advice or treatment did not meandental advice or treatment; and that Mrs. Barstow had, while she and Congress Life agent Mr. Chu were completing the application, disclosed to Mr. Chu that Megan had been receiving the very orthodontic treatment then noted in Dr. Powell's records and that she would need a second set of braces. (R. 302, 307, 357; C. 543-44.) Thus, if the trial judge erred at all in submitting the contract count to the jury, the error was in not entering judgment as a matter of law in favor of Mrs. Barstow. Likewise the trial judge did not err in entering judgment on the verdict on the contract count or in denying the motion of Congress Life for judgment as a matter of law on the contract count.
The issue which determines the correctness or incorrectness of the trial judge's rulings on the bad faith count is whether the ground cited by Congress Life for denying pre-authorization was, as a matter law, arguable in good faith. The good faith arguability of the ground cited for denial depends on the information known by Congress Life at theSeptember 16, 1997 date of the denial letter. At that time, Congress Life knew the contents of Mrs. Barstow's application for the policy; the contents of the policy of insurance itself; the contents of Dr. Gunter's request for pre-authorization; the contents of Dr. Powell's records to that date; and the gist of Congress Life's agent Chu's September 12, 1997 telephone discussion with Mrs. Barstow, who told Mr. Chu she had not learned Megan would need surgery until "6-8 months ago," long after the completion of the application (Plaintiff's Exhibit 31). Congress Life had acquired no other information peculiar to Mrs. Barstow's claim. As already discussed, Congress Life had not initiated any "dental review" and did not initiate the one that validated Mrs. Barstow's claim until October, after Mrs. Barstow had filed her lawsuit. *Page 943 
At trial, Mrs. Barstow testified, without contradiction, that, while she and Mr. Chu were completing the application for the insurance, she told Mr. Chu that Megan was receiving orthodontic treatment and that Megan would need a second set of braces. (R. 357.) Mr. Chu, in his testimony, admitted that Mrs. Barstow "may have" told him so. (R. 302, 307.) Dr. Powell's records, to the April 3, 1996 date when Mrs. Barstow and Mr. Chu completed the application, reflect only orthodontic treatment and do not mention surgery. (C. 543-44.) The first reference to surgery appears in Dr. Powell's entries for July 15, 1996, over three months after the completion of the application. (C. 544.) The November 3, 1997 "reconsideration" letter by Congress Life to Mrs. Barstow's lawyer admits as much. (C. 397.) This state of the information available to Congress Life provided no debatable or arguable basis for denying pre-authorization, and Congress Life did not perform any further investigation before it issued the denial of pre-authorization on September 16, 1997.
While Mrs. Barstow did complete the application for the insurance on the same day she took Megan to the orthodontist for one of Megan's visits, April 3, 1996, Dr. Powell's notations for that date reveal only the same sort of orthodontic treatment he had been rendering to Megan before that date, which, as already stated, Mrs. Barstow disclosed to Mr. Chu on that date. The record is uncontradicted that the completion of the application on the same day as the visit to the orthodontist is a pure coincidence: that the catalyst for Mrs. Barstow's making the appointment with Mr. Chu and seeking the insurance with Congress Life was the death of Mrs. Barstow's husband and the loss of coverage for her and her children under his policies. (R. 300, 355-56, 365.) Any responsible inquiry of either Mrs. Barstow or Mr. Chu would have revealed the coincidental nature of the coincidence. Thus the record supports the theory of bad faith failure to honor an insurance contract.
Because the record contains substantial evidence supporting both the contract count and the bad faith count, the trial judge did not err in submitting both counts to the jury, entering judgment on the verdict, or denying Congress Life's motions for judgment as a matter of law. Thus the trial court should be affirmed on the issue of the liability of Congress Life on both counts.
[6] While Luke testified that she learned of the dental consultant's opinion on October 16th (R. 486, 490.), Luke's November 3 letter to Mrs. Barstow's attorney said that Congress Life was advised by independent dental consultants on October 15th that the consultant's "response would be sent out the next day." (C. 397; R. 492.)